Williams v. Moorehead & Knowles.

---

ISRAEL WILLIAMS v. WILLIAM MOOREHEAD AND E. C.
KNOWLES, *Partners as Moorehead & Knowles.*

1. SERVICE BY PUBLICATION; *Judgment in Collateral Action.* Where ser-
vice by publication is made against a defendant, who is a non-resident,
in the case authorized by the statute in the manner and for the time
prescribed by the statute, and such service is proved by the affidavit of
the printer knowing the same, and is filed in the court, but the court
does not examine or inspect the service or the proof thereof, the judg-
ment by default rendered against the defendant upon such service is not
void, nor subject to successful attack collaterally.

2. SUPPLEMENTAL PETITION; *Practice.* A plaintiff, with the consent of
the court, may file a supplemental petition alleging facts material to the
case occurring after the filing of his original petition, and upon the trial
he may establish the allegations in his supplemental petition, although
they differ from and contradict, in some respects, the former petition
filed by him.

*Error from Washington District Court.*

ACTION commenced by William Moorehead and E. C.
Knowles, partners as *Moorehead & Knowles,* against Charles
Mount, February 9, 1882, to quiet title to the south half of
section 4, in township 3 south, of range 2, Washington county,
which they claim to own and be in actual possession of under

39—33 KAS.

a tax deed executed February 5, 1880. Service was had upon Mount by publication. At the April Term of the court for 1882, *Israel Williams* made application to be made a defendant, and also for leave to answer. All of this was granted, over the objection of *Moorehead & Knowles.* On the same day, April 8, 1882, judgment was rendered by default in favor of plaintiffs against Mount. To this *Williams* objected, and then excepted. On May 18, 1882, *Williams* filed his answer to the petition of plaintiffs, and among other things alleged therein that he was the owner in fee simple of the lands described in the petition, and that the tax deed under which the plaintiffs claimed possession and title was void. On June 26, 1882, the plaintiffs filed their motion to require *Williams* to make his answer more definite and certain. This motion was sustained by the court, and on September 16, 1882, *Williams* filed an amended answer, setting forth in great detail the alleged irregularities in the tax proceedings and tax deed under which the plaintiffs claimed title. At the August Term of the court for 1882, Charles Mount filed his application to have the judgment rendered against him on April 8, 1882, opened up, and to be let in to defend. It was agreed between the plaintiffs and Mount, over the objection of *Williams*, that the judgment rendered against Mount should be set aside, and that he be allowed to answer. On September 26, 1882, plaintiffs filed their reply to the answer of *Williams*, containing a general denial of the allegations therein contained. On September 11, 1882, Mount filed his answer to the petition of plaintiffs, alleging, also, that the tax deed of plaintiffs was invalid, and that he was the owner in fee of the premises. On September 16, 1882, *Williams* filed an answer to answer of Mount. On December 12, 1882, Mount replied to the answer of *Williams.* On April 24, 1883, *Moorehead & Knowles*, by permission of the court, filed a supplemental petition, setting forth that since the commencement of the action and after *Williams* had been made a party, they had purchased and were in possession of the claim, interest and estate of Charles Mount to the premises in controversy; that Mount's title which they had purchased,

arose by virtue of a certain sheriff's deed to said land, made to Mount on August 6, 1878, by the sheriff of Washington county, in a certain attachment proceeding of said Mount against Elias W. Tuttle, and also by virtue of a certain decree obtained by Mount in the district court of Washington county, on April 10, 1880, against William Wallenweber, forever barring him from all interest in or claim to the land, and decreeing Mount to be the owner thereof. This supplemental petition also alleged that *Williams's* claim of title to the land was solely by virtue of a deed made to him by said Wallenweber long subsequent to said decree. On April 18, 1884, *Williams* filed an answer to the supplemental petition, alleging that the decree referred to in said petition as having been made on April 10, 1880, in an action pending in the district court of Washington county, wherein Charles Mount was plaintiff and William Wallenweber was defendant, pretending to quiet title to the land in dispute, was fraudulently and wrongfully obtained, and therefore was void as against him.

At the April Term for 1884, the case came on for trial before the court without a jury. The court made the following findings of fact:

"1. That it is agreed between all the parties to this action, that the original patent title to the land in controversy in this action, viz., the south one-half of section 4, in township 3 south, of range 2 east, in Washington county, Kansas, was formerly in Elias W. Tuttle, and that at the time this action was commenced, plaintiffs were in the actual possession of said premises.

"2. That on the 5th day of June, 1876, said Elias W. Tuttle and wife conveyed said land by warranty deed to Alfred Hawkins, which deed was filed for record February 20, 1882.

"3. That on the 6th of May, 1878, said Hawkins and wife conveyed said land by warranty deed to William Wallenweber, which deed was filed for record October 26, 1878.

"4. That on the 5th day of January, 1882, said Wallenweber and wife conveyed said land by warranty deed to defendant Israel Williams, which deed was filed for record February 20, 1882.

"5. That on the 5th day of February, 1880, a tax deed was issued from Washington county, Kansas, to Charles L. Flint,

which was filed for record February 7, 1880. This tax deed was based upon a sale of said land for taxes of the year 1875, which sale was made in the year 1876; the amount necessary to redeem at the date of the making of the said tax deed was $72; December 3, 1880, said Charles L. Flint conveyed said land by quitclaim deed to J. W. Rector, which deed was filed for record December 16, 1880. February 1, 1882, said premises were conveyed by said J. W. Rector and wife to plaintiffs, which deed was filed for record May 11, 1882. In regard to this tax sale of 1876 for the delinquent taxes of 1875, the court finds that the said land was sold for $16.50, whilst the legal amount of taxes, penalties, interests, costs, and charges, including costs of sale, was only $16.35, and that in addition to this that the county board duly contracted to pay and only paid the printer for publishing the delinquent tax-sale list for that year 20 cents per tract, while the treasurer collected 25 cents per tract, which would further reduce the amount for which said lands should have been sold to $16.30 — so that said land was sold for 20 cents more than it should have been sold for.

"6. That on the 23d day of March, 1878, a suit was commenced against said Elias W. Tuttle in the district court of this, Washington county, by one Charles Mount; on the same day an affidavit for attachment was filed on the ground of the non-residence of said Tuttle, and on the same day an order of attachment was issued to the sheriff, which order was returned March 27, 1878, showing that the lands in question in this suit had been attached March 28th. An affidavit for service by publication was made and proof of the same was filed July 30, 1878. The proceedings to obtain service by publication were regular in every respect, and also the publication was regularly made and the proper proof filed by the printer. This proof was not examined by the court, and was therefore neither approved nor disapproved by the court. Judgment was rendered in this case August 6, 1878, by default against said Tuttle and in favor of said Mount for $6,395, with interest at 10 per cent. per annum from the date of said judgment, and the property in question was ordered to be sold to satisfy said judgment. An order of sale was issued October 10, 1878, and returned December 7, 1878, showing a sale of the lands in controversy to said Charles Mount, who was the judgment creditor; the consideration paid by said Mount was $430; the motion to confirm this sale was filed by Mount December 7, 1878, and allowed on the same day, and an order of confirma-

tion entered and a sheriff's deed to said Mount was made January 24, 1879, which was filed for record January 24, 1879.

"7. That before Mount had purchased the land in question at sheriff's sale in the attachment suit, he had actual notice that William Wallenweber claimed to own the land.

"8. That on the 12th day of February, 1880, an action was brought by Mount against Wallenweber in this court to quiet his title to said land against said Wallenweber; the land at this time was vacant and unoccupied. Service in said case was made by publication upon proper affidavit being filed showing the non-residence of Wallenweber and the other statutory grounds required; the proper notice was published for four consecutive weeks in a newspaper printed, published and of general circulation in said county, the dates of publication being February 13, 20, 27, and March 5, 1880; the affidavit of the printer in proof of such publication was filed in manner and form as required by law. Although this proof was not examined and therefore not approved or disapproved by the court, a decree was entered in said case quieting said Mount's title to said premises by default on the 10th of April, 1880.

"9. July 24, 1882, Mount and wife executed a quitclaim deed for said premises to plaintiffs, which was filed for record April 24, 1883."

Thereon the court made the following conclusions of law:

"1. As conclusions of law from the foregoing facts, the court finds that the plaintiffs are entitled to have their title quieted to said premises as against said defendant.

"2. That the costs in this case should be paid by defendant, Israel Williams."

Williams filed a motion for a new trial, alleging that the conclusions of law by the court, from the facts found, were inconsistent with and not supported by the said findings; that upon the findings made by the court, he was entitled to judgment and decree quieting the title in him as to the lands in question; and also moved the court for judgment in his favor, upon the findings of fact. These motions were overruled by the court, Williams excepting. He thereupon moved the court to set aside the 6th, 7th, 8th and 9th findings of fact, upon the ground that the findings of fact were not supported by sufficient evidence, and were contrary to the evidence; and

also embraced therein a motion for a new trial, upon the ground of errors of law occurring upon the trial, and for erroneous conclusions of law. These motions were overruled, Williams excepting. Thereupon the court rendered its judgment and decree in said cause in favor of the plaintiffs, and against the defendant *Williams*. The plaintiffs were also given judgment for costs against the defendant *Williams*, taxed at $26.75. He excepted, and brings the case here.

*Lowe & Smith*, for plaintiff in error.

*J. W. Rector*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The common source of title to the land in controversy was from Elias W. Tuttle. Upon the trial, Moorehead & Knowles in support of their case introduced a tax deed executed to Charles L. Flint, February 5, 1880; a quitclaim deed from Charles L. Flint to J. W. Rector, executed December 3, 1880; a warranty deed from J. W. Rector and wife to William Moorehead and E. C. Knowles, executed February 1, 1882; a sheriff's deed, executed January 24, 1879, to Charles Mount, reciting a judgment in favor of Charles Mount against Elias W. Tuttle, dated August 6, 1878; and a sale of the real estate under said judgment on November 23, 1878; also, the proceedings in an attachment commenced March 23, 1878, by Charles Mount against Elias W. Tuttle, including the judgment rendered in such case on August 6, 1878; the proceedings in an action of Charles Mount against William Wallenweber, commenced February 12, 1880, to quiet title, and in which action Charles Mount obtained such a decree, on April 6, 1880; and, lastly, a quitclaim deed from Charles Mount and wife to William Moorehead and E. C. Knowles, executed July 24, 1882.

On the part of Williams, it is contended that the tax proceedings for the years for which the land was sold were so irregular and defective that the tax deed of February 5, 1880, conveyed no title. Williams's chain of title, introduced in

evidence, was as follows: A warranty deed from Elias W. Tuttle and wife to Alfred Hawkins, executed June 5, 1876, but not filed for record until February 20, 1882; a warranty deed from Alfred Hawkins and wife to William Wallenweber, executed May 6, 1878, and filed for record October 26, 1878; and a warranty deed from William Wallenweber and wife to Israel Williams, executed January 5, 1882, and recorded February 20, 1882.

No claim is made before us that the tax deed of February 5, 1880, is valid, or that Moorehead & Knowles have any title thereunder. As Elias W. Tuttle conveyed the premises to Alfred Hawkins before Charles Mount commenced his attachment proceedings against said Tuttle, and as the findings show that Charles Mount had actual notice that William Wallenweber, the purchaser from Hawkins, claimed to own the land at the time that Mount purchased the land at sheriff's sale, we may assume, at least for the purposes of this case, that Mount was not a purchaser without notice, although the sheriff's deed was recorded January 24, 1879, and the conveyance from Tuttle to Hawkins was not recorded until February 20, 1882. (*Bush v. T. G. Bush & Co.*, ante, p. 556; *Holden v. Garrett*, 23 Kas. 98; Comp. Laws of 1879, ch. 22, § 21; Freeman on Executions, § 336; 2 Leading Cases in Equity, pt. 1, pp. 94, 95; *Davis v. Ownsby*, 14 Mo. 170; *Chapman v. Coates*, 26 Iowa, 288; *Hoy v. Allen*, 27 id. 208.) Mount, however, had the legal right to contest the alleged claim and title of Wallenweber in a direct proceeding brought therefor.

This conclusion leads up to the inquiry as to the validity of the judgment quieting title in Charles Mount, rendered April 6, 1880. As Williams did not attempt to purchase from Wallenweber until January 5, 1882, Williams obtained no title or interest in the property attempted to be conveyed to him on said date, if the judgment of April 6, 1880, decreeing that Wallenweber had no legal or equitable estate in the property so conveyed, is to be given full force and effect. The finding of the court in regard to this matter is as follows:

"That on the 12th day of February, 1880, an action was

brought by Mount against Wallenweber in this court to quiet his title to said land against said Wallenweber, and the land at the time was vacant and unoccupied. Service in said case was made by publication, upon proper affidavit being filed, showing the non-residence of Wallenweber, and the other statutory grounds required. The proper notice was published for four consecutive weeks in a newspaper printed, published and of general circulation in said county, the dates of publication being February 13, 20, 27, and March 5, 1880. The affidavit of the printer in proof of such publication was filed in manner and form required by law. Although this proof was not examined, and therefore not approved or disapproved by the court, a decree was entered in said case quieting said Mount's title to said premises by default, on the 10th of April, 1880."

The decree in the case commences as follows:

"And now on this 6th day of April, of the April term, 1880, of this court, and the 10th day of said month, this cause comes on regularly for hearing. The plaintiff appears by J. W. Rector, his attorney of record. The court finds that due and legal notice, for the time and in the manner prescribed by law, has been had and service made in this action by newspaper publication upon said defendant, William Wallenweber, he being then and ever since a non-resident of and absent from the state of Kansas, so that service of summons in this action could not be made upon him within the state of Kansas; and this being an action in which service and notice by publication upon a non-resident defendant is proper and authorized by law, yet said defendant has failed to answer or demur to plaintiff's petition herein, or to appear in any way, but made and still wholly makes default herein," etc.

Service was actually made in the case, and filed. The only evidence offered tending to show that proof of service was not examined by the court, was the testimony of J. G. Lowe, one of the attorneys for Williams. He testified, among other things:

"I examined the papers in the case of Charles Mount v. William Wallenweber; that the affidavit of proof of publication of service did not have any indorsement that it had ever been approved by the court and ordered filed; nor were there any papers in the case showing that the court had ever examined the service of proof thereof and approved it. I am well

acquainted with the practice in this court about such matters, and have been for ten years. I know that at the time the case was heard that it was not and never had been the practice of the court either to examine or approve the service by publication, or the affidavit proving such service, and that it was not done in that case."

Upon this oral evidence and the finding of the court, it is contended on the part of Williams that all the proceedings in the action of Mount *v.* Wallenweber to quiet title are void; hence, that no title passed to the premises from Mount to the plaintiffs. The claim is, that the district court of Washington county never acquired jurisdiction in the case of Mount against Wallenweber to render the judgment therein, *because proof of service was not inspected or approved by the court.* The following provision of § 75 of the code is cited : "No judgment by default shall be entered on such service until proof thereof be made and approved by the court, and filed." Counsel, however, fail to quote in their brief all of said § 75. It reads as follows :

"Service by publication shall be deemed complete when it shall have been made in the manner and for the time prescribed in the preceding section; and such service shall be proved by the affidavit of the printer, or his foreman or principal clerk, or other person knowing the same. No judgment by default shall be entered on such service until proof thereof be made, and approved by the court, and filed."

Without, at this time, passing upon the question whether the finding and judgment of the court can be impeached by oral evidence, we are of the opinion that as service by publication was made upon Wallenweber in the manner and for the time prescribed by § 74 of the code, and as such service was proved in accordance with the provisions of the statute and afterward filed, that the failure of the court to examine or inspect the proof thereof, or to further approve the same, did not defeat or set aside such service. We say, "to further approve the proof of service," because, notwithstanding the oral evidence and the finding of the trial court, it appears from the recitations of the decree that the court found "that due and

legal notice for the time and in the manner prescribed by law had been had and service made in the action by publication upon the defendant Wallenweber." Although there was no actual examination or inspection of the proof of service under the evidence and findings of the court, and although we have no order of the court entered on the minutes approving the proof of service and ordering the same to be filed, there was a recitation in the decree of approval of the proof of service. Therefore we do not consider said judgment void, or liable to be successfully attacked collaterally. (*Foreman v. Carter*, 9 Kas. 674; *Pierce v. Butters*, 21 id. 124.)

The failure of the court to more fully "approve the proof of service" when it appears that the service was regular and sufficient in all other respects, is at most an irregularity—not an omission that will oust the court of jurisdiction and render its judgment a nullity. Under the terms of said § 75, in all cases where judgments are rendered by default upon service by publication, it would be good practice for the court to enter on its minutes approval of the proof of service, and order the same to be filed, but its omission so to do is not fatal to the jurisdiction of the court.

Complaint is made that the court erred in rendering judgment against Williams for all the costs. We think this complaint is well taken as to such costs as accrued before Williams was let in to defend, and the judgment as to the costs will be modified accordingly. The other alleged errors need only be noted briefly. Williams is in no situation to complain of the action of the district court in opening up the judgment obtained by default by Moorehead & Knowles against Mount. Moorehead & Knowles had the right to waive the statute and consent to an answer being filed.

Section 144 of the code authorizes the court to allow a plaintiff to file a supplemental petition alleging facts material to the case occurring after the former petition; therefore when Moorehead & Knowles became the owners of the title of Charles Mount subsequent to the commencement of the action, they had the right, with the consent of the court, to file the

supplemental petition setting up their claim under such title, notwithstanding the allegations of such supplemental petition were in conflict with the original petition filed by them. This case was virtually disposed of upon the supplemental petition and the answer of Williams thereto.

Before Mount brought his action against Wallenweber to quiet his title, he had obtained a sheriff's deed. He knew then that Wallenweber made some claim to the land; but Wallenweber, if he had title at all, must have derived the same through Tuttle; Tuttle's conveyance was not recorded until February 20, 1882, long after the institution of the attachment proceedings and the suit to quiet title; therefore he brought his action properly against Wallenweber to determine whether the latter had any interest in the land. (*Douglass v. Nuzum*, 16 Kas. 515.) The judgment was properly rendered; and it is too late for Wallenweber, or any person claiming from him, to object in a collateral proceeding.

The judgment of the district court will be affirmed, except that all costs which accrued prior to the time that Williams became defendant will be taxed to Moorehead & Knowles.

All the Justices concurring.