No. 18,958.

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTGOMERY et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. DRAINAGE—*Jurisdiction and Duties of Drainage Boards.* The legislature when enacting the drainage act of 1905 (Gen. Stat. 1909, §§ 3000-3056) intended that the people of each drainage district should exercise sufficient police power to prevent, if possible, a recurrence of the calamities suffered from floods and high waters during the two preceding years, and that their boards, not the courts, should settle and determine all matters within their power and jurisdiction.

2. SAME—*Assessments Ascertained—Injunction Proceedings—Limitation of Actions.* That no benefits will inure to the owner of property taxed to pay for a levee, that his property was fraudulently and disproportionately assessed beyond its actual value, and that the assessment included certain property not liable therefor, are matters to be presented to and determined by the board, and if a resort to the courts be desired the action must be begun within thirty days from such determination.

3. SAME—*Drainage Board May Construct Part Only of System of Levees Surveyed.* The fact that a board has procured a survey and report of an entire system of levees the cost of which would exceed the statutory limit does not preclude the subsequent construction of a portion of such system, the cost of such portion falling below the statutory limit.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed November 14, 1914. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *Chester Stevens,* of Independence, for the appellant.

*F. J. Fritch,* of Independence, for the appellees.

The opinion of the court was delivered by

WEST, J.: The railway company appeals from a judgment denying an injunction to prevent the collection of a tax to pay for a certain levee ordered by the defendant drainage district, a demurrer to the evidence having been sustained.

It is contended that no benefits were conferred on the company by the construction of the levee, and hence its property was about to be taken for public use without just compensation; that its property was fraudulently assessed greatly in excess of its actual and proportional value, and that some of its property not liable to special assessment was nevertheless included. A fourth complaint, said by the defense to be made here for the first time, is that the district laid out a system of levees which would cost more than ten per cent of the taxable property liable therefor, and was adopting the subterfuge of constructing simply one portion of such system without any legal authority.

We have examined each matter complained of but are impelled to the conclusion that they are not properly before us for determination. One section of the drainage act provides that "no suit to set aside any general or special tax or assessment or to enjoin the making or collection of any assessment or installment thereof, and no defense of any kind to the validity of any improvement bond or assessment to pay the same, shall be allowed unless brought within thirty days after the confirmation of the assessors' report." (Gen. Stat. 1909, § 3034.) The report was confirmed April 19, 1911. It is stated in the brief of the district and not controverted by the plaintiff that on April 27, 1911, the district board met as a board of equalization, proper notice having been given, and that no appearance or complaint was made by the plaintiff. This suit was not brought until December 19, 1911.

The drainage act (Laws 1905, ch. 215, Gen. Stat. 1909, §§ 3000-3056) was passed in view of the damage and destruction arising out of the flood of 1903 and the high waters of 1904. The legislature saw fit to place in the custody of the people of a given drainage district, through their board of directors, the exercise of sufficient police power to prevent, if possible, a recurrence of the calamities suffered in the two preceding years. The most cursory reading of the act would indicate an intention that the people of the drainage district, through their board, and not the courts, were to settle and determine all matters placed within the power and jurisdiction of such boards. While a limit was placed on the cost of any levee to be constructed, requirement was made that after an assessment and the confirmation of the report of the assessors a notice must be given to all property owners interested of an opportunity to present at a stated time and place all objections to the collection of the taxes assessed. Section 3022 provides that "at the time fixed in such notice, the board of directors shall convene and hear the complaints of all persons interested, and shall have power to review, revise, alter, correct and amend the report of the assessors to any extent necessary to equalize and make such assessments just, equitable and impartial, and to correct all errors, wrong and injustice that may have been done to any persons complaining of said report. After hearing all persons complaining, the board of directors shall confirm the report of the assessors as returned by them or amend the same as it may deem just and equitable, and confirm the same as so amended, and thereupon the amounts charged against each tract of land shall become a special assessment and constitute a lien thereon. The decisions of the board of directors correcting, altering or amending and confirming the report of the assessors shall be entered of record and shall be final and conclusive." Section 3034 expressly provides that the act shall be liberally construed and

21—93 KAN.

that the collection of the taxes or assessment under this provision shall not be defeated "by reason of any omission, imperfection or defect in the organization of any drainage district or in any proceeding accruing prior to the issuing of any bond or the confirmation of the report of the assessors of any special assessment." Certainly the complaints, except the last one made by the plaintiff, must be included under the head of omission, imperfection or defect, and in order to be judicially considered should have been brought to the attention of the court by proceedings begun within the time fixed by the statute already referred to.

The last complaint is that the board was attempting by subterfuge to construct a part of a complete system of levees, the cost of which would exceed the statutory limit, and hence was acting *ultra vires*. It is forcibly argued by counsel that when the board assumes to act without jurisdiction it may be enjoined regardless of the thirty-day limitation found in the statute fixing the limits of such jurisdiction. Were this question actually presented it may be assumed without so deciding that within the decision in *Rockwell v. Junction City*, 92 Kan. 513, 141 Pac. 299, and cases cited, the thirty-day statute would have to be deemed controlling, for it was there said of a similar provision of a paving statute, "This limitation is valid and covers all irregularities and defects in the proceedings. . . . It has been ruled that the statute applies and cuts off defenses that the improvement proceedings are void by reason of fraud or other defects." (p. 515.) It would seem that if proceedings are void by reason of fraud a board would be as completely without jurisdiction as if it were proceeding to exceed the statutory limit of expense.

From the record, however, we can not say that the board was thus attempting to exceed the limit fixed by the statute, for while the cost of the original complete

system reported upon three years previously would exceed the statutory limit of ten per cent, the board in August, 1910, after reciting that it was not advisable or practical at that time to construct the entire system, resolved, in view of the several propositions made by the residents of the district, to procure a report as to a levee and improvements between station 0 and station 274.40, along the east bank of the Verdigris river, the resolution reciting that the board was not fully advised as to the extent, character, location and sufficiency of the levees constructed by individual landowners, nor as to the value thereof or the cost of completing the same according to the plans and specifications as shown by the report of the engineer. It was, therefore, determined by the board to employ a civil engineer to make a report under oath, supplemental to the one of 1908, touching a part only of the first system or improvement covered by the former report, such report to describe the several levees constructed by individual landowners along the line of the former survey between the two stations already mentioned. In November, 1910, the board adopted the supplemental report thus provided for, and resolved that the work ought to be proceeded with, and in April, 1911, a resolution was adopted to build the levee from station 0 to station 39 and to pay therefor by special taxes and assessments. There is no claim that the cost of this portion of the levee, taken by itself, exceeds the statutory limit. The members of the board being sworn officers of the district are presumed, until the contrary is shown, to have acted in good faith and in accordance with law. (*Roby v. Drainage District*, 77 Kan. 754, 757, 758, 95 Pac. 399.)

From the foregoing it appears, therefore, that the last contention of the plaintiff is not supported by the record, and that the others are foreclosed by its failure to proceed within the time fixed by the statute.

The judgment is affirmed.