No. 19,309.

R. E. GARDNER et al., *Appellees,* v. THE BOARD OF COMMISSIONERS OF THE CITY OF LEAVENWORTH et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. LIMITATION OF ACTIONS—*Construction of Sewers—Special Assessments—Injunction.* The thirty-day statute of limitations applicable to suits to enjoin the levy of special assessments for sewers (Gen. Stat. 1909, § 994) governs although a city by ordinance directs the clerk to give the property-owners thirty days' notice that improvement bonds will be issued, unless the property is redeemed from liability on account of such special assessments.

2. SAME—*When Statute Begins to Run.* The rule that the statute begins to run when the ordinance levying the assessment is published, followed.

3. SAME—Under section 1040 of the General Statutes of 1909 it is not essential to wait until the tax is actually levied, provided the acts and proceedings of the city are such as to show that such burden will be imposed unless enjoined.

4. PLEADINGS—*Amended and Supplemental Petitions.* While an amended petition usually relates back to the time of filing the original petition, a pleading named amended petition, which is in fact a supplemental petition in part setting up things which have occurred subsequent to the filing of the original petition, must be judged by what it is and not by what it is named.

5. INJUNCTION—*Joinder of Causes of Action.* Neither section 1040 of the General Statutes of 1909 nor section 88 of the civil code permits in cases of this kind the joinder of causes of action which do not affect all the parties to the action.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed March 6, 1915. Reversed.

*C. P. Rutherford,* of Leavenworth, for the appellants.

*William W. Hooper,* of Leavenworth, for the appellees.

The opinion of the court was delivered by

WEST, J.: Property owners affected by a special assessment for the construction of certain sewers united in a suit to enjoin the city from issuing improvement bonds and from causing any assessments or levies to be made to pay for the cost of the construction of such sewers. The amended petition alleged that ordinance No. 3036, which purported to provide for the main sewer, did not bound or describe any portion of the city. Also, that on November 16, 1909, an ordinance was passed declaring it necessary to construct certain sewers. A copy of this ordinance shows that it provided for the construction of "the sewers hereinafter described comprising District Sewer No. 9 in Sewer District No. 9 as a part of the foul water sewerage and drainage of the city," and described dis-

trict No. 9 sewer as twelve inches in diameter, of tile or cast iron where necessary, extending along certain lines, a ten-inch sewer along certain other lines, an eight-inch sewer, a northeast branch sewer eight inches in diameter, a southwest branch eight inches in diameter along certain described lines, with "all the necessary manholes, lampholes, flush tanks, junctions, masonry structures and other appurtenances necessary to make the sewer effective as provided in this ordinance and in accordance with the plans, specifications and stipulations hereinbefore mentioned." It was alleged that without any further act in this respect and without any notice to the plaintiffs the board caused such sewer to be constructed, "and also a large number of lateral sewers in said district," as shown in a map attached; that for the construction of such main trunk and lateral sewers the commissioners had agreed to pay many thousands of dollars, and had levied the assessments complained of, and had proceeded without a previous estimate of the cost being made and filed as required, and without first appropriating by ordinance to pay for such construction, and without issuing or arranging to issue internal-improvement bonds; that the amounts assessed were grossly excessive and greatly exceeded the benefits; that the sewers had been so constructed that some of the plaintiffs were practically barred from access thereto. Later, an amendment to this amended petition was filed, setting up careless and improper construction and averring that the city had, as provided by ordinance and custom and law, given property owners affected by the special assessments notice that within thirty days from the date fixed in such notice such assesments must be paid, and that relying on the time and date so fixed and upon the custom, ordinance and practice of the city in this respect, the plaintiffs rightfully relied on the date so fixed as the time from which the thirty days statute of limitations would begin to run.

Still later, a supplemental petition was filed alleging that a later ordinance had been passed to supersede the former ordinances touching the main sewer, which ordinances were thereby abandoned. To these pleadings a demurrer was interposed on the ground that they did not state facts sufficient to constitute a cause of action, and on the further ground that several causes of action were improperly joined. From an order overruling the demurrer on both grounds the defendant appeals.

While it is alleged that by ordinance No. 3256 the city ascertained, determined and attempted to levy the amounts to be paid on the lots of the respective plaintiffs for sewers in district No. 9, and that the former ordinances referred to in the plaintiffs' pleadings had been wholly abandoned, an inspection of such ordinances shows that No. 3036 created the district, No. 3058 declared the necessity of building the sewers, and No. 3231 determined the amount of special assessments necessary to pay the cost of the sewer described in No. 3058, also "apportioning, ascertaining, charging and assessing the amount due on each lot liable for such assessment." No. 3256 levied the ten annual installments of such special assessments and prescribed the sum due each year, "The special assessments having been heretofore apportioned by ordinances of this city against the property herein described."

Ordinance No. 3231 was passed December 20, 1910, and published December 24. Suit was begun January 25, 1911. The statute provides that no such suit may be maintained "after the expiration of thirty days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained." (Gen. Stat. 1909, § 994.) Ordinance No. 3231 required the city clerk immediately to mail to the property owners affected a notice of the amount charged against their property, giving such owners thirty days' notice that improvement bonds payable in ten annual

installments would be issued and that such owners
might redeem their property from liability on account
of such assessments by making certain payments. It
is stated that on the notice which was sent appeared
the date of December 28, and the plaintiffs construed
this as a continuation of such a custom and as a waiver
on the part of the city of the right to avail itself of the
thirty days statute of limitations beginning at the date
of the publication of the ordinance, and cite the case of
*Kansas City v. Cullinan,* 65 Kan. 68, 68 Pac. 1099. It
was there held that an ordinance having been passed
levying special assessments and requiring the clerk to
cause it to be published in a daily newspaper, which he
did, but because of numerous errors appearing in the
publication he ignored it and caused it to be correctly
published on the day following, an action brought
within thirty days of the last publication was in time.
There is no question here about the publication of the
ordinance on the 24th of December, and it has been
repeatedly held that the amount due on each lot or
piece of ground is ascertained when the ordinance
levying the assessment is published. (*Hoffmeyer v.
Reed,* 88 Kan. 363, 128 Pac. 383, and cases there cited.)
The statutory provision quoted has been held to cut
off defenses of every kind that might be made against
such assessment. (*Rockwell v. Junction City,* 93 Kan.
1, 142 Pac. 268; *Railway Co. v. Montgomery County,*
93 Kan. 319, 322, 144 Pac. 209.) The mere custom of
sending out notice and the requirement to send it, in
this instance obeyed by the clerk, can not be deemed
sufficient to operate as an amendment of the statute,
or as an extension of the time fixed thereby, or as an
estoppel upon the city which the plaintiffs can invoke.

The amendment to the petition also alleged that after
December 28, 1910, the plaintiffs received notice of
additional assessments, as shown by exhibits B to L,
inclusive, which were ordinances determining and as-
certaining the assessments for certain lateral sewers.

33—94 KAN.

These ordinances appear to have all been passed either on January 3, 10, 11 or 24, 1911, and published January 6, 12 or 27, Nos. 3247 and 3248 being published January 27, two days after the suit was brought.

As to the assessments made by ordinances Nos. 3244, 3233, 3234, 3235, 3236, 3245, 3237, 3238 and 3239, all published on January 6 or 12, the pleadings filed by the plaintiffs stated sufficient facts to constitute a cause of action.

It is contended that as to Nos. 3247 and 3248, published two days after the suit was brought, the·action was premature, and attention is called to *Mason v. Independence,* 61 Kan. 188, 59 Pac. 272, and *Baldwin v. Neodesha,* 83 Kan. 263, 111 Pac. 185. The first of these cases was decided before the enactment of the statute under which this suit was brought. (Laws 1905, ch. 113, § 1, Gen. Stat. 1909, § 1040.) The second involved assessments in a city of the second class, and the statute applicable is not mentioned. Here the provision is that an injunction may be had by "any person against whose property any . . . special assessment . . . may be levied or charged, or whose property or rights may to any extent be injuriously affected by any such illegal act threatened or about to be done by any city officer." (§ 1040.) The petition alleged that the sewer had already been constructed, and "for the construction of said main trunk sewer and the laterals herein mentioned, which at this time are not completed, the said commissioners of said city have agreed to pay many thousands of dollars." The amendment avers, among other things, that various assessment ordinances had been published, including those now under consideration. The petition was filed January 25, 1911, the amended petition February 11, 1911, the amendment to the petition February 18, 1911, and the supplemental petition March 28, 1911. An amended petition must usually be considered as of the date the original petition was filed. (*Brown v. Galena Mining and Smelting Co.,*

32 Kan. 528, 4 Pac. 1013.) But a pleading must be judged by what it is and not by what it is named, and the amendment to the petition in fact contained an averment of matters which had occurred since the filing of the original petition, and hence was in part a supplemental petition. Both by statute and by decisions a supplemental petition may set forth facts occurring subsequent to the filing of the original petition. (Civ. Code, § 145; *Williams v. Moorehead & Knowles,* 33 Kan. 609, 7 Pac. 226; *Dreilling v. National Bank,* 43 Kan. 197, 23 Pac. 94; *Brown v. Stuart,* 90 Kan. 302, 303, 133 Pac. 725.) It is urged that there was no evidence that any burden would be placed on the property of any of the plaintiffs to pay for the laterals referred to in ordinances Nos. 3247 and 3248 until the enactment thereof, to which it is replied that under the present statute an injunction will lie when any such burden is threatened or about to be imposed, and that in view of the ordinances and other acts of the city it was plain and clear that it was intended to levy the assessment for the two lateral sewers in question, and that such previous acts present clearly the situation contemplated by the statute. Prior to the enactment of this section it was the settled law of this state that injunction would not lie on account of mere threats or until steps were actually taken to impose the burden. (*Bridge Company v. Comm'rs of Wyandotte Co.,* 10 Kan. 326; *Troy v. Comm'rs of Doniphan Co.,* 32 Kan. 507, 4 Pac. 1009; *Challiss v. City of Atchison,* 39 Kan. 276, 18 Pac. 195; *Andrews v. Love,* 46 Kan. 264, 26 Pac. 746; *Comm'rs of Seward Co. v. Stoufer,* 47 Kan. 287, 27 Pac. 1000; *Comm'rs of Barber Co. v. Smith,* 48 Kan. 331, 29 Pac. 565; *Hurd v. Railway Co.,* 73 Kan. 83, 84 Pac. 553.) Hence it is fairly concluded that by the language used by the legislature when the amendment of 1905 was made (Laws 1905, ch. 113, § 1, Gen. Stat. 1909, § 1040) it intended to permit such suits to be brought without waiting until the tax is actually levied when it can be shown that it was intended to be levied.

"An injunction may be obtained to prevent an irreparable injury, even though no such injury has as yet occurred. If such injury is threatened or impending to property or property rights an injunction will be granted. The threatened injury must, however, be clearly impending, and it is generally not sufficient to show mere threats to do the thing sought to be enjoined; some overt act toward carrying out the threat must usually be shown. . . . There must be at least a reasonable probability that the injury will be done if no injunction is granted, and not a mere fear or apprehension." (22 Cyc. 757, 758.)

It is argued that whatever causes of action may be shown by the pleadings, if any, are improperly joined, and it is suggested that each property owner affected by the assessment for each alley or lateral sewer is in no way affected by those whose property is assessed for a separate and distinct lateral, and that unless some of the plaintiffs own property in more than one of the blocks affected by these sewers they could not enjoin assessments of property owned by another plaintiff in another block. Section 88 of the civil code is invoked, which permits the plaintiff to unite several causes of action in the same petition, but requires that they must affect all the parties to the action except in actions to foreclose mortgages and other liens, and authorities in support of the rule provided by this section are cited. In response to this counsel for the plaintiffs invokes section 1040 of the General Statutes of 1909, providing that in actions of this kind "any number of persons whose property or rights may be charged or affected injuriously by such threatened illegal or unauthorized act may join as parties in the application to obtain such injunction." This clause follows the provision that any person against whose property any tax, special assessment or burden may be levied or whose property rights may be injuriously affected may enjoin. It is clear that if an assessment levied by one ordinance affected the property rights of numerous persons they could all join, although one had no interest in the property owned by

another; but if all the special assessments are provided for by special ordinances, each affecting only the property of one of a number of persons, there is nothing in the section referred to which would appear to authorize a joinder of their causes of action. It is argued that the main sewer with the laterals constitute one scheme of public improvement, and that the district through which such system of sewers is to run should be regarded as similarly affected by an assessment of each or all of such sewers. If four property owners in four parts of the city remote from one another should unite to enjoin the levying of assessments for four separate sewers in their four neighborhoods, all such ordinances being void, it would not be for the protection of their property from "such threatened illegal or unauthorized act," but from four separate, different and distinct illegal and unauthorized acts, in no one of which three of the plaintiffs could have any possible interest. And the fact that the construction of these various lateral sewers was provided for in the same ordinance which provided for the construction of the main sewer does not change or minimize the effect of levying the assessment for the different laterals at different times and by different ordinances. (*Griffith v. Griffith*, 71 Kan. 547, 81 Pac. 178.)

It must be held, therefore, that in so far as the plaintiffs are separately affected by each of these lateral assessment ordinances, they must proceed without uniting with those not likewise affected.

It is insisted that ordinance No. 3036 does not describe or circumscribe any certain territory of the city and does not bound anything and is "an absolute failure." Whatever a study of the metes and bounds and lots and blocks set forth in this ordinance might show, it is unnecessary to enter upon it, for the reason that the statute of limitation relieves us from that burden.

The pleadings taken together contain sufficient allegation to warrant the introduction of evidence touching

the property affected by the assessment ordinances for the lateral sewers, but on account of the misjoinder of causes of action the demurrer on that ground was improperly overruled. The demurrer on the ground that no cause of action was stated, which of course involves the thirty-day statute of limitation, was also improperly overruled, and the judgment is therefore reversed and the cause remanded for further proceedings in accordance herewith, including permission, on such terms as the court may deem proper, for the plaintiffs to plead further, if they so desire, in respect to the lateral sewer assessments.