No. 23,235.

WILLIAM M. TODD, *Appellant,* V. THE KAW VALLEY DRAINAGE
DISTRICT OF WYANDOTTE COUNTY, *Appellee.*

SYLLABUS BY THE COURT.

DRAINAGE DISTRICT — *Negligence of Foreman — Injury to Workman —
District Not Liable for Damages.* Where a drainage district organized
upon the petition of two-fifths of the resident taxpayers under a stat-
ute the purpose of which is to benefit the public by protecting persons
and property from injury by floods, is engaged in clearing out the
channel of a river, no liability on its part arises by reason of an injury
to one of its workmen through the negligence of his foreman, there
being no specific statutory provision in reference thereto.

Appeal from Wyandotte district court, division No. 2;
FRANK D. HUTCHINGS, judge. Opinion filed November 12,
1921. Affirmed.

*J. L. Smalley,* and *D. F. Carson,* both of Kansas City, for
the appellant.

*Thomas A. Pollock,* of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: William M. Todd sued the Kaw Valley Drainage
District alleging that while working as a deck hand on a
dredge-boat used by it in cleaning out the channel of the Kan-
sas river he was injured as the result of the negligent conduct
of the foreman. A demurrer to his evidence was sustained,
and he appeals.

The sole question presented is whether a drainage district
organized under the Kansas statute by the board of county
commissioners, upon the petition of two-fifths of the resident
taxpayers, is liable for the negligent acts of its agents while
carrying out work of the character indicated.

The prevailing view has been that drainage districts are
essentially governmental in their functions and for that reason
are not answerable in damages for the negligence of their
officers or employees unless the statute expressly (or by such
clear implication as amounts to the same thing) so provides.
The plaintiff asserts that a tendency has recently developed to

abandon this position. It is true that in Illinois earlier decisions on the subject appear to have been modified in this direction. But the distinctions there made are to some extent at least based upon features of the statute giving the drainage districts a commercial character not possessed by those of this state. A recent Nebraska case however seems to support the plaintiff's contention, the statute involved being quite similar to our own. (*Bunting v. Oak Creek Drainage District*, 99 Neb. 843.) The modification of the Illinois doctrine is there referred to and stress is laid upon the consideration that drainage districts are voluntary corporations existing principally for the benefit of the owners of the land within their boundaries. It has elsewhere been argued that districts of this nature, although brought into being only on the application and with the consent of a certain percentage of the inhabitants, are not properly classed as voluntary, because the organization is forced upon at least a nonconsenting minority of the residents. The present state of judicial opinion on the general question, and the reasoning upon which the conflicting views are based are so fully exhibited in a recent note as to make a detailed discussion here unnecessary. (L. R. A. 1918 B, 1010.)

While this court has not heretofore passed upon the specific question now presented, the test of liability of public bodies it has applied, and the effect it has given to the statute relating to drainage districts, compel the affirmance of the judgment of the trial court upon these grounds: The purpose of the legislature in providing for the organization of drainage districts like the defendant was to preserve and protect life and property from the ravages of floods. (*Drainage District v. Railway Co.*, 87 Kan. 272, 278, 123 Pac. 991; *Railway Co. v. Montgomery County*, 93 Kan. 319, 144 Pac. 209.) It might have created the districts by its own direct action, or it might have provided that districts should be created wherever certain conditions existed. It evidently concluded however that the self-interest of those most directly, but not solely, concerned could be relied upon as a sufficient incentive to bring about the desired improvements so far as they are vitally necessary. "The power [to create a drainage district] is exercised by the legislature itself by the passage of the drainage act, which is to become operative in any part of the state when certain conditions

are found to exist, and certain agencies or instrumentalities for which it provides are organized. The operation of the law does not depend on the will of the petitioners, but it is the will of the legislature which is to be put in force when the board of county commissioners find that the prescribed conditions exist within the district which the petitioners ask to have incorporated. If the conditions are found to exist a corporation is organized and an election held to choose the officers of the district, who proceed to make the improvements as the legislature has provided." (*Railroad Co. v. Leavenworth County,* 89 Kan. 72, 79, 130 Pac. 855.) An inference that the owners of property within a district were regarded as the sole beneficiaries of the contemplated improvements cannot be drawn from the fact that the burden of meeting by taxation all the consequent expenses was cast upon them, for the legislature may of course in its discretion require the entire cost of an improvement designed to promote the public welfare to be borne by those peculiarly benefited. (25 R. C. L. 87.) The public character of the ends sought by the creation of the class of drainage districts to which the defendant belongs is sufficiently indicated by the title of the act under which it was created:

"An act in relation to natural watercourses, providing for the protection, control, deepening, widening, removing obstructions from, changing, regulating, establishing and maintaining the channels thereof; the construction, maintenance and repair of levees along the same to prevent overflow, and the raising or elevation of railroad tracks and public highways that interfere with the construction and maintenance of such levees; the construction and regulation of drains and other works conducive to the public health, convenience and welfare in districts subject to overflow; and to these ends providing for and authorizing the organization of public corporations to be known as drainage districts, and prescribing the duties and defining the powers of such public corporations." (Laws 1905, ch. 215 [Gen. Stat. 1915, ch. 31, art. 3, preceding running section 3890.])

The statute requires an engineer's report to be made before the widening and deepening of a watercourse is undertaken, and provides that such improvement may be ordered if upon the consideration of the report and other information it is determined "that the improvement of any natural watercourse by the removal of obstructions from the channel thereof or otherwise, or the construction of any levee, levees or system of levees will prevent the overflow of such natural watercourse,

and thereby protect all of the lands within such drainage district from injury therefrom, and will be conducive to the public health, convenience, or welfare." (Gen. Stat. 1915, § 3906, amended Laws 1920, ch. 40, § 2.) This court has said, in holding that such a drainage district is not required to build or maintain bridges where its ditches cross a highway:

"It is well established that this liability is imposed upon a private corporation by common law. . . . But that principle has no application to a case where the construction of ditches or embankments by a public corporation makes it necessary to improve a highway. The drainage district, like the county, is a quasi public corporation, an arm of the state, created by the legislature to perform a function of government. . . . In draining the swamps and lowlands of the district, the drainage board performs a public service and promotes the public health and welfare. . . . The fact that the construction of the drains and ditches was intended to and does improve and render more valuable the lands of private individuals, who alone are charged with the cost of the improvement, makes the corporation none the less a quasi public one." (*Jefferson County v. Drainage District*, 97 Kan. 302, 303, 304, 155 Pac. 54.)

And it has also characterized as an exercise of the police power the work of this particular district in cleaning the channel of the river. (*Drainage District v. Railway Co.*, 87 Kan. 272, 279, 123 Pac. 991.)

A city is held liable without express statute for an injury resulting from the negligence of its employees if it is acting in its proprietary capacity, but not if the function undertaken is governmental. (See *Rose v. City of Gypsum*, 104 Kan. 412, 179 Pac. 348, and cases there cited.) Difficulty has often arisen in applying this familiar principle, and an apparent exception is made with regard to the maintenance of its streets, which may not be entirely logical. (See *Everly v. City of Gas*, 95 Kan. 305, 307, 147 Pac. 1134, and *Hibbard v. City of Wichita*, 98 Kan. 498, 501, 159 Pac. 399.) So the nonperformance by a city of a class of duties described as "ministerial" is held to constitute actionable negligence, even though such duties are connected with the performance of governmental functions. (*Bowden v. Kansas City*, 69 Kan. 587, 77 Pac. 573.) The case just cited has been referred to as repudiating the usual distinction between the private and public functions of a city. (Note, 25 L. R. A., n. s., 97.) Whether or not that case departs from the generally accepted theory the test used with respect to a municipal cor-

poration proper—an organization of wide powers having much in common with a private corporation—is not necessarily applicable to such purely governmental bodies as counties and townships, to which class the drainage district belongs.

The district having been created as a governmental agency of the state for the carrying out of public purposes, and the injury complained of having arisen in the course of work adapted to that end, no liability on the part of the defendant exists, there being no specific statutory provision to modify the general rule.

The judgment is affirmed.