BESSIE SHERWOOD, Appellant, v. WORTH COUNTY DRAINAGE DISTRICT NUMBER ONE.

Division One, April 6, 1923.

1. **NEGLIGENCE OF OFFICERS: Failure to Construct Safe Bridge: Injury to Traveler.** A drainage district organized in the circuit court under the Act of 1913, is not liable in damages for the death of a traveler who was killed while attempting to cross a bridge negligently and defectively constructed by the district over a drainage ditch which intersected a previously much-used public highway.

2. ———: ———: ———: **Public Corporation.** A drainage district organized under the laws of Missouri is a public or *quasi*-public corporation, organized in the exercise of the State's police powers, and is not liable in damages for the torts of its officers, although they result in injury to travelers upon a public highway. Unless the statute expressly says that such a district shall respond in damages for the negligent construction of a bridge over its drainage ditch which intersects a public highway, it is not liable in damages for consequent personal injuries to a traveler on said highway, and the statute contains no such provision.

Appeal from Worth Circuit Court.—*Hon. John M. Dawson,* Judge.

AFFIRMED.

*DuBois & Miller* and *J. E. Engle* for appellant.

The court erred in sustaining respondent's demurrer to appellant's petition and in holding that respondent under the allegations of the petition was not liable to appellant. In a limited sense only is respondent a public corporation, and notwithstanding the public phase of its character, respondent is still liable for appellant's injury and damage in this case. 14A Corpus Juris, p. 778;

Secs. 4406 and 4378, R. S. 1919; Ashby v. Medicine Creek Drainage Dist., 224 S. W. 343; Bradbury v. Drainage Dist., 236 Ills. 36-38; Bungenstock v. Drainage Dist., 163 Mo. 198; Schalk v. Drainage Dist., 226 S. W. 277; 40 Cyc. 661; Nauman v. Drainage Dist., 113 Mo. App. 577; Drainage Dist. v. Turney, 235 Mo. 80; Drainage Dist. v. Buschling, 270 Mo. 162; Moxley v. Pike Co., 208 S. W. 246; 28 Cyc. 1256, 1318; Roth v. City of St. Joseph, 164 Mo. App. 26; Brown v. Kansas City, 141 Mo. App. 632; Stevens v. Walpole, 76 Mo. App. 218; City of Flora v. Naney, 26 N. E. (Ills.) 645; City of Chicago v. Loebel, 81 N. E. (Ills.) 796; Bush v. Railroad, 59 N. E. (N. Y.) 838; Griffith v. Royal Arcanum, 182 Mo. App. 656; Hayward v. Ins. Co., 52 Mo. 181.

*Kelso & Kelso* for respondent.

(1) The court properly sustained respondent's demurrer to the petition.  (a) The defendant is a quasi corporation; it is in no sense a private corporation; it is merely a governmental agency and constitutes a political subdivision of the State.  Arnold v. Worth County Drainage District, 234 S. W. (Mo. App.) 349; Arthaud v. Grand River Drainage District, 232 S. W. (Mo. App.) 266; Laws 1913, p. 235, sec. 4; Land & Stock Co. v. Miller, 170 Mo. 240; Wilson v. Drainage District, 237 Mo. 39, 46; Morrison v. Morey, 146 Mo. 543; Houck v. Drainage District, 248 Mo. 273, 382; Nauman v. Drainage District, 113 Mo. App. 577; Dillon on Municipal Corporation (2 Ed.) sec. 10-a; 25 Cyc. 194; Board of Improvement v. Moreland, 127 S. W. (Ark.) 469; People v. Helper, 240 Ill. 196; Reclamation District v. Sherman, 105 Pac. (Cal.) 280.  (b) Being a political subdivision of the State and not being made liable by express statutory provisions, the defendant is not liable for the negligence of its officers.  Arnold v. Worth County Drainage District, 234 S. W. (Mo. App.) 349; Moxley v. Pike County, 208 S. W. (Mo.) 246; Lamar v. Road District, 201 S. W. (Mo.) 890; Stephens v. Beaver Dam Drainage District, 80 So.

(Miss.) 641; 10 Am. & Eng. Ency. Law (2 Ed.) 236; 14 Cyc. 1057; 2 Farnham on Waters & Water Rights, sec. 256; Dillon on Municipal Corporations (2 Ed.) p. 716, sec. 761; 3 Abbott on Municipal Corporations, secs. 955-973; Improvement District v. Moreland, 127 S. W. (Ark.) 469; Elmore v. Drainage Commissioners, 135 Ill. 269; Freel v. School District, 41 N. E. (Ind.) 321.

WOODSON, J.—The plaintiff brought this suit in the Circuit Court of Worth County against defendant to recover $10,000 damages sustained by her for the alleged negligence of the defendant in killing her husband.

A demurrer was filed to the petition and sustained, and the plaintiff declining to plead further, judgment was rendered thereon for the defendant, and after moving unsuccessfully for a new trial, the plaintiff duly appealed the case to this court.

In order to clearly present the legal proposition presented for determination, it will be necessary to set forth the petition and the demurrer thereto, which are as follows (formal parts omitted):

"Plaintiff for her cause of action states that at all the times herein mentioned defendant, Worth County Drainage District No. One, was and still is a corporation organized and existing under and by virtue of the laws of the State of Missouri and having power to sue and liable to be sued as such corporation.

"Plaintiff further states that said corporation was organized by, and is composed of the owners of lands within a certain defined district in Worth County, Missouri, and running north and south across said county and along the West Fork of Grand River; that the lands composing said district are swamp and overflow lands, and that the object of the formation of said corporation and drainage district was the reclamation and draining of said lands, to free the same from overflow and swamps, so that the same might be farmed and operated to the advantage and profit to the owners thereof; that in pursuance of said object and in accordance with a plan for

reclamation duly prepared by the engineers of said district and regularly and legally adopted by said district, said corporation did, during the years 1919 and 1920, cut and open certain ditches through the lands comprising said district for the purpose of shortening and straightening the channel of said West Fork of Grand River, aforesaid, so that the surplus waters of said West Fork might easily and quickly escape from said lands.

"Plaintiff further states that an inland town or village known as Oxford has for many years prior to the organization of said district been located a short distance to the eastward of the lands comprising said district; that the town of Parnell is and for many years prior to the organization of said district has been located about five miles to the westward of the lands comprising said district; that said town of Parnell is a station located on the Chicago-Great Western Railroad. Plaintiff further states that for many years prior to the formation of said district and the organization of said corporation, a certain public road or highway crossed the lands comprising said district, running east and west between the said town of Oxford and the town of Parnell: that for many years prior to the formation of the said district, all of the merchandise used by the merchants of the town of Oxford and all produce purchased and taken in trade by them was transported to and fro between the town of Oxford and the railroad station at Parnell over the highway aforesaid; that the said highway was a main or principal thoroughfare for the traveling public generally between the towns of Oxford and Parnell aforesaid.

"Plaintiff further states that within the boundaries of said drainage district, said public road in parts, runs east and west between the northeast quarter and the southeast quarter of Section 24, Township 65, of Range 32, in Worth County, Missouri; that on or about the ―― day of May, 1920, the said Worth County Drainage District No. One, in pursuance of its said plan for reclamation, cut across said public road where it runs along the line between the northeast quarter and the southeast

quarter of said Section 24, its main ditch constructed by it for the purpose of shortening and straightening said West Fork of Grand River, for the reclamation of the lands within said district and for the benefit of the owners thereof, as aforesaid; that said main ditch so constructed across said public road was fifteen feet in depth, twenty-two feet wide at the bottom thereof, and at least fifty feet wide at the surface thereof, and much larger at the time of the injury hereinafter alleged; that said main ditch, when so built and constructed across said public road and continuously to and at the time of said injury, completely and totally obstructed the same and completely closed the same to public travel thereon.

"Plaintiff further states that under the laws of the State of Missouri and by virtue of the statutes of said State under which defendant corporation was organized, and from which it derived its authority in the premises, it was the duty of defendant, within ten days after building and constructing its said ditch across the public road aforesaid, to build over said ditch a safe and suitable bridge to be used by the traveling public on the road or highway aforesaid, with the same safety and convenience as before the said ditch was built and constructed across said highway by defendant, as hereinbefore stated; that this duty the said defendant wrongfully and negligently failed to perform in any manner whatsoever, but that soon thereafter, defendant did wrongfully, carelessly and negligently build and construct and did, wrongfully, negligently and carelessly, permit to be built and constructed across said ditch on said highway, a seriously defective and dangerous bridge or crossing of a flimsy and temporary character; that said bridge or crossing was constructed of three cottonwood logs forty-two feet in length laid across said ditch six feet below the surface of said highway, on which were nailed two-inch bridge plank as flooring; that the south or downstream side of said bridge was two feet and three inches higher than the north or upstream side of said bridge or crossing; that said bridge or crossing

was wholly and totally without banisters or railings of any kind or nature, whatsoever, and wholly and totally without anything to protect vehicles in crossing so as to prevent them running off of the edges of said bridge or crossing and falling into the bed of the ditch and running water, eight feet below; that said bridge or crossing was so unsteady and unstable that the same would sway violently up and down while being crossed by wagons, trucks and other vehicles; that the defendant herein further carelessly, wrongfully and negligently placed and permitted to remain at the easterly approach to said bridge or crossing a large pile or quantity of dirt taken from the ditch, so that it was necessary for one approaching said bridge from the east or the direction of the village of Oxford, aforesaid, to make a sharp turn to the left immediately before and while descending the sloping bank of said ditch to the slanting, swaying and unprotected bridge or crossing as aforesaid; that the said defendant, knowingly, wrongfully, carelessly and negligently permitted said bridge or crossing to be and remain in the unsafe and dangerous condition aforesaid, and, knowingly, wrongfully, carelessly and negligently permitted and invited the traveling public to cross and use the said bridge in the unsafe and dangerous condition aforesaid.

"Plaintiff further states that she was from the—day of ——, 1920, and until his death on or about the 13th day of August, 1920, the wife of one Frank Sherwood; that she lived with him and was supported by him as his wife in the village of Oxford, in Worth County, Missouri, from said—day of——, 1920, to the time of his death as aforesaid; that the said Frank Sherwood was at the time of his death as aforesaid, in the employment of one W. A. Wilson, who operated a general store at the said village of Oxford; that it was a part of the duties of her said husband while so in the employ of said W. A. Wilson to run and operate a motor truck from the village of Oxford across the territory of the defendant drainage district, along the highway aforementioned, to and from

the railroad station aforesaid at Parnell; that on or about the 13th day of August, 1920, the said Frank Sherwood, in pursuance of his said employment and the duties thereof, started from the village of Oxford with a truck loaded with produce from the general store aforesaid, along the aforementioned highway to the town of Parnell, for the purpose of marketing same through the railroad station at said town of Parnell.

"Plaintiff further states that while her said husband was operating the said motor vehicle or truck as aforesaid on said highway and at the bridge or crossing over defendant's ditch hereinbefore described, in a careful and prudent manner, and while attempting to cross said bridge or crossing from the east and using ordinary care and caution in so doing, by reason of the wrongful, careless and negligent acts of defendant as aforesaid, and in passing the pile of dirt, knowingly and carelessly and negligently placed by defendant at the eastern approach to said bridge as aforesaid, and while making the turn to the left made necessary thereby, and in descending the bank of defendant's said ditch to the unsteady and slanting bridge aforesaid, and while using all of the care and caution possible under the circumstances in so doing, by reason of the careless and negligent acts of defendant as aforesaid, the truck driven by plaintiff's husband was thrown over the south or downstream side of said bridge where the same, by reason and on account of the careless and negligent acts of defendant herein described and set forth, was unprotected by banisters or railing of any kind whatsoever, whereby the husband of plaintiff was violently thrown, together with his said motor truck, to the bottom of said ditch, and instantly killed.

"Plaintiff further states that at the time of his death by reason and on account of the wrongful, careless and negligent acts of defendant, her said husband was a young man, thirty-five years of age; that his earning capacity was $1,500 per annum; that he was in the prime of life and in good health; that by reason of the death of

her husband caused by the wrongful and negligent acts of defendant aforesaid, she has been damaged in the sum of ten thousand dollars, for which she prays judgment, and for costs of suit.''

The demurrer was as follows:

''And afterwards, to-wit, on February 21st, 1921, being the first day of the regular February, 1921, term of said Circuit Court of Worth County, Missouri, comes defendant and files its demurrer to plaintiff's petition herein, which said demurrer (omitting caption) is as follows: to-wit:

''Now, at this time comes the above named defendant and shows to the court that it appears upon the face of plaintiff's petition that the defendant in this case is a drainage district organized under the Laws of Missouri, 1913, relating to the incorporation of drainage districts by circuit courts, and that plaintiff by her action seeks to recover damages against said defendant for the death of her husband by reason of defendant's negligence in the construction of a bridge on a public road where the same is cut or intersected by defendant's ditch, or the new channel of Grand River, and defendant demurs to plaintiff's petition herein and for ground of demurrer says:

''First, that said petition does not state facts sufficient to constitute a cause of action.

''Second, that defendant is but a governmental agency created to perform a work of general public utility and is not subject to a suit or liable for damages in this action.

''Third, the defendant thus created and organized is an arm of the State, a political subdivision of the State, and exercises prescribed functions of government, is not a private corporation in any sense and is not subject to suit or liable for damages in this case.

''Fourth, defendant is not a corporation organized under the general laws of the State relating to corporations, but organized under a special statute from which it derives its legal existence under the law, and no provi-

sion whatever is made in that law or by any other law that defendant may be sued and made liable for damages,. nor is any right given defendant to institute or prosecute any suit for any purpose except the collection of assessments.''

I.   There is but a single legal proposition presented by this record for determination and that is stated by counsel for appellant in this language:

''The court erred in sustaining respondent's demurrer to appellant's petition herein and in holding that respondent under the allegations of the petition was not liable to appellant.   In a limited sense only is respondent a public corporation, and notwithstanding the public phase of its character, respondent is still liable for appellant's injury and damage in this case.''

In support of this contention counsel cite the following authorities:   14A Corpus Juris, 778; Secs. 4406, 4378, R. S. 1919; State ex rel. Ashby v. Medicine Creek Dr. Dist., 224 S. W. 343; Bradbury v. Dr. Dist., 236 Ill. 36, 86 N. E. 163; Bungenstock v. Dr. Dist., 163 Mo. 198; Schalk v. Dr. Dist., 226 S. W. 277; 40 Cyc. 661; Nauman v. Dr. Dist., 113 Mo. App. 577; Dr. Dist. v. Turney, 235 Mo. 80; In re Dr. Dist. Buschling v. Ackley, 270 Mo. 162; Moxley v. Pike Co., 208 S. W. 246; 28 Cyc. 1256, 1318; Roth v. City of St. Joseph, 164 Mo. App. 26; Brown v. Scruggs, 141 Mo. App. 632; Stevens v. Walpole, 76 Mo. App. 218; City of Flora v. Naney, 26 N. E. (Ill.) 645; City of Chicago v. Loebel, 81 N. E. (Ill.) 796; Bush v. Railway, 59 N. E. (N. Y.) 838; Griffith v. Royal Arcanum, 182 Mo. App. l. c. 656; Hayward v. Ins. Co., 52 Mo. 181.

Counsel for appellant insist that all the authorities cited by them support the contention made by them, except the case of Arnold v. Drainage Dist., 234 S. W. (Mo. App.) 349.

In one sense that is true, but in the broader legal sense it is not true.   Counsel do not seem to draw the distinction between corporations which possess a twofold existence or capacity, one a private capacity to act for itself and property owners in their individual capac-

ity, and the other, as a purely public or governmental corporation, created under the police power of the State, for the performance of certain specific governmental functions in the district.

The correct rule of law upon the subject is correctly stated in 25 Cyc. 194 in this language:

"A levee district is a quasi-public corporation, created for the State, under its police power, for the performance of certain prescribed governmental functions in the district, such as the prevention of the overflowing or inundation of lands. It is simply a governmental agency, of the same nature as a county taxing district, or school district, for the performance of certain governmental functions."

The same rule is stated in the case of Arnold v. Drainage District, 234 S. W. 349, a companion case of this. In that case the plaintiff had judgment, and the Court of Appeals reversed it outright, without remanding it. That ruling we think was right.

In Arthaud v. Grand River Drainage District, 232 S. W. l. c. 266, the Kansas City Court of Appeals, speaking through BLAND, J., said:

"In the first place the act declares such drainage district to be a 'public corporation of this State.' [Sec. 4, p. 225, Laws 1913.] . There is no question but that such districts are in no sense private corporations, but are public governmental agencies and constitute political subdivisions of the State."

In Morrison v. Morey, 146 Mo. l. c. 560, it is said:

"Plaintiff contends that the levee district constitutes a political subdivision of the State, and hence is amenable to the provisions of this constitutional limitation, while defendants contend that the district is a mere private corporation, and hence is exempt from those restrictions.

"It is manifest that the levee district is not a private corporation. A private corporation is an aggregation of individuals who have voluntarily associated themselves together. Here the levee district is constituted by the

county court laying out the district, and a majority vote of the landowners in the district may order the work to be done. While the law requires a notice to be given of the intention to apply to the county court for the formation of the district, it leaves the power to form the district in the court. The landowners can defeat the whole scheme by refusing, by a majority vote, to order the work done and thus nullify the action of the county court in forming the district. Still the minority are drawn into it involuntarily, and this could not be done if it was a private corporation.

"It is a public political subdivision of the State which the State has the power to create, under its police powers, and as such subdivision it exercises the prescribed functions of government in the district. [People v. Reclamation Dist., 53 Cal. 346; Hoke v. Perdue, 62 Cal. 545; Elmore v. Drainage Commrs., 135 Ill. 269; State ex rel. Baltzell v. Stewart, 74 Wis. 620; Commrs. of Dr. Dist. v. Griffin, 134 Ill. l. c. 338; Dean v. Davis, 51 Cal. 406.]

"The case of Nugent v. Levee Commrs., 58 Miss. 197, is in nearly all of its essential elements like the case at bar, and there is a striking similarity between the act construed in that case and Chapter 101, Revised Statute 1889, and the amendment thereof in 1893.

"It is fundamentally true that the State has no power to compel an owner to improve his land. [Cooley's Con. Limitations (6 Ed.) p. 475.] The case of Gaines v. Buford, 1 Dana, 484, cited by that distinguished author, illustrates the principle, if, indeed, any illustration was needed of such a plain proposition. It is also true that the police power of the State extends to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State, and this includes the right to enact suitable regulations looking to the accomplishment of a public purpose and designed for the promotion of public interests. [Tiedeman's Limitations on Police Power, sec. 1 et seq.; Cooley's Const. Lim. (6 Ed.) p. 704 et seq.] This power is universally

recognized, and its application to any given law is the
only question open to debate. The power to construct
drains and sewers, to open and improve streets, to regu-
late the uses of private property so as to prevent nui-
sances, to establish fire limits in large and populous
cities, to establish quarantine, to remove and isolate per-
sons affected with smallpox and other contagious dis-
eases in order to stop the spread of disease, is all de-
pendent upon the police power of the State, exercised for
the benefit of the health and well being of the people. In
every case there must be the impress of a public purpose
upon the law to make it constitutional. It is not enough
that private interests will be subserved, or that private
property will be enhanced in value. There must be a
public interest applicable to a community of persons to
be benefited. The health of the people is the substrata
upon which the prosperity of the State rests, and laws
conducive to health have always been upheld. In this
case the police power of the State is broad enough to au-
thorize the law in question (Welty on Assessments, secs.
350, 351 and 352; Hager v. Supervisors, 47 Cal. 233), and
the case itself is a striking illustration of the impossi-
bility of attaining the end in view by private consent or
co-operation and of the necessity of the State lending its
aid to the accomplishment of the purpose intended to be
reached. Levees must be continuous to be effective. No
man alone could accomplish any material good by con-
structing a levee in front of his own land, where his
neighbors refused to do likewise. The levee must all be
built at once, or it will fall short of the beneficent pur-
pose intended. The contrariety or selfishness of human
nature makes it impossible to secure the co-operation of
all persons whose concert of action is necessary to suc-
cessfully cope with the common enemy of man, the floods.
One or more persons in a district may be willing to in-
cur the almost certainty of disease or even death, rather
than meet the small expenditure necessary to prevent it
by building a common levee, just as they might be willing
to run the risk of fire by constructing a cheap wooden

house in a populous neighborhood, or of drinking impure well water, or of allowing nuisances and filth and disease-breeding agencies to remain on their premises. The law cannot control such cases simply because the person offending is pursuing a course to his own interests, but the law can control and regulate him if other persons are injuriously affected by his conduct, because such other persons cannot peaceably control him themselves. *This law would be unconstitutional if its only purpose and effect was to improve the value of the lands of the persons in the district, but such is not the only object of the law. We take judicial notice of the fact that overflows are followed by disease, resultant from the decaying deposits left by the water, and that such disease is not and cannot be confined to a single family but spreads among the people of the locality without any fault of theirs, and which they are powerless to prevent. This, then, is a proper case for governmental interference under the police power of the State, as much so as the construction of drains and sewers.* [Cooley's Const. Lim. (6 Ed.) p. 627.]'' (Italics ours.)

Counsel for respondent have well stated the law of the case as follows:

In Wilson v. Drainage & Levee Dist., 237 Mo. l. c. 46, GRAVES, J., used the following language:

''The defendant is a drainage district. Is such district such a political subdivision of the State as to give us jurisdiction under the provisions of Section 12, Article 6, of the Constitution? We think not. It is true that we have said that it is a political subdivision of the State. [Morrison v. Morey, 146 Mo. 543.] But, so is a township or a school district. While they are political subdivisions of the State, they are not such as are contemplated by the section of the Constitution supra referring to our jurisdiction.''

In Houck v. Drainage District, 248 Mo. l. c. 382-3, the following language is used:

''That the State, by the Legislature, has the power to create corporations for the purpose of reclaiming or

improving swamp and overflowed lands by ditches and drains and levees, in districts prescribed by it, or to be ascertained and fixed by such appropriate instrumentali- ties as it may provide, is no longer a question in this State. Nor is it an open question that the instrumental- ity so created may be invested with all the necessary power and authority to construct and maintain whatever works may be necessary to accomplish such object, and to raise the funds to pay for the same by assessment on the lands to be benefited thereby. [Quoting authorities.] These corporations, as is said in the most of the cases cited, are, when formed, public subdivisions of the State, exercising the powers granted them for the purposes of their creation, within their territorial jurisdiction, as fully, and by the same authority, as the municipal cor- porations of the State exercise the powers vested by their charters.''

From Land & Stock Co. v. Miller, 170 Mo. pages 251, 255, we quote the following:

''Levees keep out the water. Irrigation canals bring in the water. Drains take out the water. The public has an interest in each kind of such laws. By keeping out the water, the health of the inhabitants is conserved and the value of the lands increased, and the revenues of the State enhanced. Thus the State is directly interested both for sanitary and financial reasons.

''The irrigation laws bring in the water and make valuable the arid lands, and thereby enhance their value, and, hence, bring in more revenue to the State. Thus the State has a direct pecuniary interest, although not a sanitary interest.

''The principles underlying the cases upholding the validity and constitutionality of levee and irrigation laws apply with even greater force to drainage laws. For, from a sanitary point of view, the dangers to health arising from overflows occasioned by floods are intermit- tent, while the dangers to health arising from marshes and stagnant pools of water are continuous and ever present. There is certainly as much, if not greater, rea-

son and necessity for drainage laws as there is for.levee and irrigation laws. Drainage laws are closely akin to sewer laws. In fact, the only difference between the two is that they are called sewers in cities and closely populated communities, while they are called drains in rural and agricultural communities, and the further difference that sewers are generally covered over to prevent the escape and dissemination of foul odors and noxious gases, and conceal the passage of their contents through the streets, while drains are open. There is, however, no difference in the legal principles applicable to the two. If one is constitutional, so is the other. If private property that is benefited by a sewer can be charged for the benefits it receives against the wishes of the owner, so also can the agricultural lands be charged for the benefits conferred upon them. The constitutionality and validity of sewer laws has been uniformly upheld. . . .

"The opinion of FOOTE, C., in Irrigation District v. Williams, 76 Cal. l. c. 367, is so apposite to this case that it requires partial reproduction here. He said: 'One of the distinguished counsel for the defendant contends that the districts contemplated by the act are private corporations, formed for a private purpose; to use his own language: "Such an organization has none of the elements of a public municipal body." While another able attorney on the same side contends that "all the constituents of a public corporation are present, and to that class of corporations a district of the statute must be assigned," and claims that the money sought to be raised under the act is a general tax, and that the system of organization of the corporations prescribed in the act is in conflict with the general plan of constitutional political organizations, and that the mode of taxation provided is different from that made necessary by the Constitution for general governmental purposes, and therefore the act is void. We are inclined to agree with the last-mentioned advocate of the defendant's cause, but to the extent only that the districts, when organized as provided in the act under discussion, have all the elements

of corporations formed to accomplish a public use and purpose, according to the rules of law laid down in Hager v. Supervisors Yolo County, 47 Cal. 223; Dean v. Davis, 51 Cal. 406; People v. Williams, 56 Cal. 647; People v. LaRue, 67 Cal. 526; Reclamation District v. Hagar, 66 Cal. 54. The results to be derived from a drainage law, and one which has for its purpose the irrigation of immense bodies of arid lands, must necessarily be the same, as respects the public good; the one is intended to bring into cultivation and make productive a large acreage of land which would otherwise remain uncultivated and unproductive of any advantage to the State, being useless, incapable of yielding any revenue of importance towards the support of the general purposes of state government, by reason of too much water flowing over, or standing upon, or percolating through, them. The other has for its main object the utilizing and improvement of vast tracts of arid and unfruitful soil, desertlike in character, much of it, which, if water in sufficient quantity can be conducted upon and applied to it, may be made to produce the same results as flow from the drainage of large bodies of swamp and overflowed lands. Such a general scheme, by which immigration may be stimulated, the taxable property of the State increased, the relative burdens of taxation upon the whole people decreased, and the comfort and advantage of many thriving communities subserved, would seem to redound to the common advantage of all the people of the State, to a greater or less extent. It is true that incidentally private persons and private property may be benefited, but the main plan of the Legislature, viz., the general welfare of the whole people, inseparably bound up with the interests of those living in sections which are dry and unproductive without irrigation, is plain to be seen pervading the whole of the act in question. This is not a law passed to accomplish exclusive and selfish private gain; it is an extensive and far-reaching plan by which the general public may be vastly benefited; and the Legislature acted with good judgment in enacting it.' ''

298 Mo.—7

In the Nauman v. Drainage District, 113 Mo. App. l. c. 578, the Kansas City Court of Appeals used the following apposite language:

"Corporations formed under the drainage law are not such as are denominated private corporations engaged in public service for private gain, but are governmental agencies created to perform a work of general public utility. The legislative opinion that prompted the enactment of this law embodied the idea that the reclamation of swamp and overflowed lands is highly beneficial. Disease-breeding areas are destroyed resulting in the improvement of sanitary conditions and waste places made tillable increasing production and public revenue. Individual benefits follow, it is true, but they are incidental and not of dominating importance in giving character to the work."

Of course, as is universally held, if the defendant is a quasi-public corporation, as the text-writers and all of the Missouri courts say it is, then it is not liable in this suit for personal injuries alleged to have resulted from the negligence of the defendant's officers in failing to build and maintain a safe bridge.

Judge Dillion in his work on Municipal Corporations (2 Ed.) sec. 762, p. 872, lays down the rule:

"Accordingly, in the different states, organizations such as counties, townships, school districts, road districts and the like, though possessing corporate capacity and power to levy taxes, and raise money, have been generally considered not to be liable in case, or other form of civil action, for neglect of public duty, unless such liability be expressly declared by statute."

The statute of 1913, under which the defendant was organized, did not impose any such liability upon the defendant, and in fact there has been no contention on the part of plaintiff in this case that there is any statutory liability.

In 3 Abbott on Municipal Corporations, sec. 955, the rule is stated thus:

"Since the government of a quasi-corporation is

ordinarily imposed by the sovereign, its business and private relations simple and further, because it performs solely governmental duties, the universal rule obtains that no liability exists in respect to the performance of its duties and obligations unless one is expressly imposed by statute.''

The rule is laid down in Almand v. Board of Drainage Commissioners, 147 Ga. 1. c. 539, as follows:

''The general rule of non-liability above stated has no application when the duties relate to branches of municipal or corporate endeavor which are private in their nature, primarily for revenue and for the promotion of corporate welfare. The cases of City v. Hunnicutt, 95 Ga. 138, and Central Georgia Power Co. v. Mays, 137 Ga. 120, recognize this distinction, and are not in conflict with the ruling here made. . . . Although the drainage commission is a governmental agency, having for its primary purpose the exercise of a governmental function within the police power of the State, it cannot take or damage private property for public purposes without first paying just and adequate compensation. It is not, however, liable for the negligence of its agents and officers in the performance of this purely governmental function, although such negligence results in injury to private property of another, whatever may be the personal liability of such agents and officers.''

In 14 Cyc. 1057, under a chapter treating of drains and drainage districts, it is said:

''A county is not liable for a defect or want of efficiency in the plan of a drain, established pursuant to statute; neither is it liable for the negligence or failure of the contractor to whom the work of construction is let to perform such work in accordance with the plan adopted. Nor is a county or drainage district liable in damages for injuries caused by the tortious acts of its officers, but the remedy is against them personally.''

In 10 Am. & Eng. Ency. Law (2 Ed.) 235, it is said:

''A drainage district, being a public corporation, is not liable for damages caused by the negligent or tort-

ious acts of its officers or agents, the remedy in such cases being a personal action against such officers or agents.''

Clearly the case of Bruntmeyer v. Drainage Dist., 196 Mo. App. 360, has no application to this case, and we so held in the case of Lamar v. Road Dist., 201 S. W. 890.

Moxley v. Pike Co., 208 S. W. 246, was a case where the facts thereof were much stronger for the plaintiff than they are here, yet in that case we held the county was not liable. There the plaintiff brought suit for personal injuries against Pike County upon facts which are in some respects exceptional. The county was operating a toll road taken over by it from a toll road corporation that had become defunct. The county was operating the toll gates and charging toll. A bridge on the road across a stream had been removed, and the plaintiff and his wife, in an automobile, ran over the bank of the stream where the bridge was, and were seriously injured. A demurrer to the petition was sustained by the trial court and the Supreme Court affirmed the judgment. In Reardon v. St. Louis County, 36 Mo. 555, it had been held that a county was a political subdivision of the State and was not liable to respond to damages caused by the negligence of its agents and employees in failing to keep its roads and bridges in repair.

Judge Dillon says that the courts assign various reasons for holding that such a quasi-public corporation will not be held liable for negligence, some of them not satisfactory, *but it is a difference universally recognized nevertheless.*

Perhaps the best reason is the simple, honest, reason given by Judge STOREY, i. e. that it is against public policy to permit these public agencies of the State to be sued in cases of this character, submitting them to the vexations incident thereto and interfering with the free exercise of their public functions.

After a careful review of all of the authorities cited by counsel for both parties, we think that there is no

question but what the great weight of authority in this State and in other jurisdictions is in favor of the ruling of the circuit court and that of the Court of Appeals in this case.

Finding no error in the record, the judgment is affirmed. All concur.