ARUNDEL CORPORATION, A CORPORATION, *et al.*, *Plaintiffs in Error*, v. W. D. GRIFFIN AND T. M. GRIFFIN, *Defendants in Error.*

En Banc.

Opinion Filed February 20, 1925.

1. The Board of Commissioners of Everglades Drainage District, composed of the Governor and four State officers, is an agency of the State, and the authority conferred upon the Board is exercised for the State and not for a subdivision of the State or for any private purpose or company. It has been denominated "a public quasi-corporation," not a quasi-public corporation .

2. The statutory provision that the Board of Commissioners of Everglades Drainage District, a State agency, shall have "all the powers of a body corporate, including the power to sue and be sued," does not render the Board liable in tort for damages. By making the Board amenable to suit, the statute does not impose liability for a cause of action that is not given by law.

3. Unlike provisions in other States, the Florida Constitution does not expressly forbid "damage" to property without just compensation.

A Writ of Error to the Circuit Court for Broward County; E. C. Davis, Judge.

Reversed.

*Glenn Terrell* and *J. B. Johnson*, for Plaintiffs in Error;

*McCune, Weidling & Hiaasen*, for Defendants in Error.

WHITFIELD, J.—The amended declaration herein, filed by W. D. Griffin and T. M. Griffin, purports to state a

cause of action against The Arundel Corporation, a corporation, and the Board of Commissioners of Everglades Drainage District. The first count sets up the particulars of an alleged concerted action and a joint tort by the defendants by causing the plaintiffs' lands to be overflowed with water (following unusually heavy rainfalls), in negligently prosecuting drainage operations in the Everglades of the State, while the second count contains similar allegations in stating a taking of the plaintiffs' lands by such overflow. A demurrer to the declaration was overruled and a demurrer to a plea to the amended declaration was sustained in a single order. This order is assigned as error upon a writ of error taken by the defendants to a judgment awarding damages to the plaintiffs.

If the demurrer to the declaration should have been sustained, the subsequent proceedings were improper.

The real questions presented are whether the Board of Commissioners of Everglades Drainage District may as such Board be sued in tort for the damages alleged, and whether the declaration shows a taking of plaintiffs' land for public purposes without compensation, the acts complained of having been done under the authority and direction of the Board.

Sections 1161, 1162 and 1163, Revised General Statutes of 1920, creating the "Board of Commissioners of Everglades Drainage District," and defining their powers and duties, are as follows:

"1161. The Governor, the Comptroller, the State Treasurer, the Attorney General and the Commissioner of Agriculture of the State of Florida, and their successors in office, are hereby constituted the governing board of said district, and shall be designated the 'Board of Commissioners of Everglades Drainage District,' with all the powers of a body corporate, including the power to sue and be sued by said name in any court of law or equity, to make

5—Vol. 89.

contracts and to adopt and use a common seal and alter the same at pleasure, to hold, buy and convey such personal or real property as may be necessary to carry out the purposes of this article, to appoint such agents and employees as the business of the Board may require, and to borrow money and to issue bonds therefor, as hereinafter provided, to enable the said Board to carry out the provisions of this article.''

''1162. The said Board is hereby authorized and empowered to establish and construct a system of canals, drains, levees, dikes, dams, locks and reservoirs of such dimensions, depth and proportions as in the judgment of the said Board is deemed advisable to drain and reclaim the lands within said drainage district, and to maintain such canals, drains, levees, dikes, dams, locks and reservoirs in such manner as said Board shall deem most advantageous and to carry out such work as in the judgment of the said Board will be advisable for harmonizing such navigation as may be incidental upon the works of drainage, or in connection with the works constructed for drainage purposes; to provide for and regulate the collection of a reasonable schedule of tolls for the use of the said canals and locks, all tolls heretofore collected for the use thereof being by this act legalized and validated; to regulate the speed of all water craft or boats of any kind plying on or using the said canals and waterways; to prescribe regulations for the construction of docks and landings along and bridges or ferries across the said canals; and to do and perform any and all other acts which in the judgment of the said Board are conducive to the upkeep and betterment of the same. Said Board is hereby authorized and empowered to clean out, straighten, widen, change the course and flow, alter or deepen any ditch, drain, river, water course, pond, lake, creek or natural stream in or out of said district that may be deemed necessary by said board to be done to facilitate

the drainage and reclamation of the territory in said district; to construct and maintain main and lateral canals or ditches; to construct such levees, dikes, sluices, revertments, reservoirs, pumping stations and other works and improvements deemed necessary to preserve and maintain the works in said district; to construct any bridge or roadway over any levees, embankments, public highways, railroad right-of-way, track, grade, fill or cut, or across any stream or pond that may be necessary to facilitate the work of draining and reclaiming the territory or any part thereof embraced in said district; said board shall have the power and authority to hold, control and acquire by donation or purchase for the use of the district, any real or personal property, to condemn any lands, easement, railroad right-of-way, in or out of said district, for a right-of-way for any canal, ditch, drain or reservoir, or for material to be used in constructing and maintaining said works and improvements for draining, protecting and reclaiming the lands in said district."

"1163. That the said Board is hereby authorized and empowered to exercise the right of eminent domain, and may condemn for the use of said district any and all lands, easements, rights-of-way, riparian rights and property rights of every description required for the public purposes and powers of said board, as herein granted, and may enter upon, take and use such land as it may deem necessary for such purposes, pending condemnation proceedings."

The "Board" created by the above quoted statute is an agency of the State and the authority conferred upon the Board is exercised for the State and not for a subdivision of the State or for any private purpose or company. It has been denominated "a public quasi-corporation," not a quasi-public corporation. Forbes Pioneer Boat Line v. Board of Com'rs. of Everglades Drainage Dist., 77 Fla. 742, 82 South. Rep. 346.

The State cannot be sued at all without its consent. 25 R. C. L. 412. A county is not liable in tort for damages, though it has express power to "sue and be sued in the name of the county." Sec. 1493, Rev. Gen. Stats. 1920; Keggin v. Hillsborough County, 71 Fla. 356, 71 South. Rep. 372; Owen v. Baggett, 77 Fla. 582, 81 South. Rep. 888. In Brumley v. Dorner, 78 Fla. 495, 83 South. Rep. 912, the suit was for an injunction to prevent a permanent injury to land. The "Board" is given "all the powers of a body corporate, including the power to sue and be sued." This does not render the Board liable in tort for damages, since the Board is a State agency acting only for the State. 25 R. C. L. 413. If a State cannot be sued without its consent, and a county is not liable in tort for damages, the law certainly does not authorize an action in tort for damages against the Board, a State agency, in the absence of a valid statute permitting it that accords with Section 22, Article 3, Constitution. See 19 C. J. 709; L. R. A. 1918B 1010 Notes; 13 A. L. R. 1276 Notes; 44 L. R. A. (N. S.) 189; 36 Cyc. 919; Ann. Cas. 1913E 1038 Notes; 25 C. J. 742.

The Board is a State agency created by statute, and it has only a drainage fund that is dependent upon taxation and is required to be used for designated public purposes. The use of such fund to pay damages for torts is not contemplated by the statute. By making the Board amenable to suit, the statute does not impose liability for a cause of action that is not given by law. The Board, a State agency with limited powers, is not liable for damages in this case under the existing law, even if the injury complained of is consequent upon the general drainage operations of the State and such injury was in fact not proximately caused by flooding from occasional heavy rainfalls to which the entire Everglades section of the State is subject. See Todd v. Kaw Valley Drainage Dist., 109 Kan. 754, 201 Pac. Rep.

1096, 33 A. L. R. 64, and Sherwood v. Worth County Drainage Dist., 298 Mo. 82, 250 S. W. Rep. 605, 33 A. L. R. 68. . Very material differences are apparent between this case and such cases as Bradbury v. Vandalia Levee & Drainage Dist., 236 Ill. 36, 86 N. E. Rep. 163, 15 Ann. Cas. 904, 19 L. R. A. (N. S.) 991; Bruntmeyer v. Squaw Creek Drainage Dist. No. 1, 196 Mo. App. 360, 194 S. W. Rep. 748; Croft v. Millard County Drainage Dist. No. 1, 59 Utah 121, 202 Pac. Rep. 539; Bunting v. Oak Creek Drainage Dist., 99 Neb. 843, 157 N. W. Rep. 1028, and Hodges v. Hall, 172 N. C. 29, 89 S. E. Rep. 802. In these and other similar cases the districts are organized by the land owners for the purpose of improving and reclaiming their lands. In this case the State constituted its officers as drainage commissioners with the powers of a public quasi-corporation to drain vast areas of public and private lands as a State undertaking for general public purposes. See 9 R. C. L. 650.

It does not appear that the plaintiffs' property was physically invaded, or that it was appropriated or permanently overflowed by the acts complained of. The Florida Constitution provides: "Nor shall private property be taken without just compensation." Sec. 12, Declaration of Rights. Unlike provisions in other States, the Florida Constitution does not expressly forbid "damage" to property without just compensation. Selden v. City of Jacksonville, 28 Fla. 558, 10 South. Rep. 457. See Richardson v. Levee Commrs., — Miss. —, 19 South. Rep. 351. Such cases as 106 U. S. 196. and 167 U. S. 204, are not applicable here.

The lands alleged to have been tortiously flooded are in a vast area of low lands known as swamp and overflowed lands, and their location make them peculiarly subject to heavy and continued overflow in unusual rainfalls; and the plaintiffs acquired and hold them with the knowledge that

an extensive system of drainage operations is necessary to permanently reclaim the lands for settlement and cultivation, that such extensive operations are being conducted by the State through the agency of State officials under statutory authority, that the rights and remedies of lands owners and occupants in the large area covered by State drainage projects are such as the law affords in the premises, and that the Constitution of the State provides that "all courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, *by due course of law.*" Sec. 4, Declaration of Rights. In this case "due course of law" does not afford the plaintiffs the remedy sought, because, in the absence of valid statutory authority, an action in tort for damages does not lie against a State agency engaged in performing a public function for the State, and the injury complained of is not a *taking* or an *appropriation* of property for public purposes within the intent and meaning of the Constitution. The declaration does not allege an actionable tort against the defendants either jointly or severally, and the demurrer thereto should have been sustained. See Wood v. Drainage Dist. No. 2 of Conway County, 110 Ark. 416, 161 S. W. Rep. 1057; 298 Fed. Rep. 553.

Reversed.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., AND GIBBS, CIRCUIT JUDGE, concur.

TERRELL, J., disqualified.

WEST, J., concurring.

The doctrine of immunity from suit by a State without its consent is sometimes mistakenly said to be founded upon

a theory now obsolete, that the king can do no wrong. But that assertion overlooks the principle that exemption from suit is an attribute of sovereignty. That this was the conception of many of the leaders in the Constitutional Convention and of the advocates of ratification of the Constitution in the several States is clear from the record of the proceedings of the conventions. But when the question was presented for judicial determination it was held that a State was subject to suit in an action of assumpsit by an individual. Chisolm v. Georgia, 4 Dall. 419.

In Hans v. Louisiana, 134 U. S. 1, the impression that the decision made and its result are expressed by the court as follows: "That decision * * * created such a shock of surprise throughout the country that, at the first meeting of Congress thereafter, the Eleventh Amendment to the Constitution was almost unanimously proposed, and was in due course adopted by the legislatures of the States. This amendment, expressing the will of the ultimate sovereignty of the whole country, superior to all legislatures and all courts, actually reversed the decision of the Supreme Court. It did not in terms prohibit suits by individuals against the States, but declared that the Constitution should not be construed to import any power to authorize the bringing of such suits. The language of the amendment is that 'judicial power of the United States shall *not be construed to extend* to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state.' The Supreme Court had construed the judicial power as extending to such a suit, and its decision was thus overruled. The court itself so understood the effect of the amendment, for, after its adoption, Attorney General Lee, in the case of Hollingsworth v. Virginia, 3 Dall. 378, submitted this question to the court, 'whether the amendment did, or did not, supersede all suits

depending, as well as prevent the institution of new suits, against any one of the United States, by citizens of another State?' Tilghman and Rawle argued in the negative, contending that the jurisdiction of the court was unimpaired in relation to all suits instituted previously to the adoption of the amendment. But, on the succeeding day, the court delivered a unanimous opinion, 'that the amendment being constitutionally adopted, there could not be exercised any jurisdiction, in any case, past or future, in which a State was sued by the citizens of another State, or by citizens or subjects of any foreign State.' This view of the force and meaning of the amendment is important. It shows that, on this question of the suability of the States by individuals, the highest authority of this country was in accord rather with the minority than with the majority of the court in the decision of the case of Chisolm v. Georgia; and this fact lends additional interest to the able opinion of Mr. Justice IREDELL on that occasion. The other justices were more swayed by a close observance of the letter of the Constitution, without regard to former experience and usage; and because the latter said that the judicial power shall extend to controversies 'between a State and citizens of another State;' and 'between a State and foreign states, citizens or subjects,' they felt constrained to see in this language a power to enable the individual citizen of one State, or of a foreign State, to sue another State of the Union in the federal courts. Justice Iredell, on the contrary, contended that it was not the intention to create new and unheard of remedies, by subjecting sovereign States to actions at the suit of individuals, (which he conclusively showed was never done before,) but only, by proper legislation, to invest the federal courts with jurisdiction to hear and determine controversies and cases, between the parties designated, that were properly susceptible of litigation in courts. Looking back from our present standpoint at the

decision in Chisolm v. Georgia, we do not greatly wonder at the effect which it had upon the country. Any such power as that of authorizing the federal judiciary to entertain suits by individuals against the States, had been expressly disclaimed, and even resented, by the great defenders of the Constitution whilst it was on its trial before the American people.''

In Kawananakoa v. Polyblank, 205 U. S. 349, this principle is tersely reiterated where, speaking through Mr. Justice HOLMES, the court said: ''A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law in which the right depends.''

This doctrine, while firmly established, does not comprehend absolute immunity from suit, but recognizes the right to judicially resist any attempt by the State to violate property rights or rights acquired under its contracts, and discriminates between acts of the State and acts of officials not legally authorized. Hans v. Louisiana, *supra;* Pennoyer v. McConnaughy, 140 U. S. 1; *Ex Parte* Young, 209 U. S. 123; Bloxham v. F. C. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; L. & N. R. Co. v. Railroad Commission, 63 Fla. 491, 58 South. Rep. 543.

In this State the manner in which consent by the State to be sued may be given is fixed by the Constitution. It is ordained that ''provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating.'' Sec. 22, Art. 8, Const.

But the authority to ''sue and be sued,'' given by statute (Sec. 1493, Rev. Gen. Stats.) does not subject a county to an action of tort by an individual, on the theory that it is a political subdivision of the State and possesses the sovereign attribute of exemption from suit without consent

duly given. Keggin v. County of Hillsborough, 71 Fla. 356, 71 South. Rep. 372.

The defendant, Board of Commissioners of Everglades Drainage District, was created by legislative act and is clothed with the powers of taxation, of eminent domain, and with police powers. Representative as it ·is of the State, in the performance of public functions the quality of sovereignty inheres in it. Clearly, therefore, it seems to me, the decision that a county is not amenable to suit in an action *ex delicto* .on the ground that it is a governmental agency, is applicable and authority for holding that an action of this character may not be maintained against the Board of Commissioners of Everglades Drainage District.