82 So.2d 353 (1955)
Jack RABIN, doing business as Jack Rabin Farms, Appellant,
v.
LAKE WORTH DRAINAGE DISTRICT, a general drainage district, Appellee.
Supreme Court of Florida, Division B.
July 1, 1955.
On Rehearing September 16, 1955.
Warwick, Paul & Warwick, West Palm Beach, for appellant.
C.D. Blackwell, West Palm Beach, for appellee.
On Rehearing en Banc September 16, 1955.
THOMAS, Justice.
The plaintiff, appellant here, filed a complaint against the Lake Worth Drainage District, appellee, alleging that he had planted peppers on land adjoining a canal maintained by the district and that the district, in order to destroy the hyacinths in the canal, caused the canal to be sprayed with a chemical herbicide which was blown upon the plaintiff's plants and which contaminated the water that the plaintiff used for irrigation of his farm. As a result of the operation the plaintiff's crop was retarded and, therefore, damaged, so it was charged. There were three counts in the complaint. One was based on negligence, one on trespass, and one on the unlawful taking of property.
It was averred that as a condition precedent to the formation of the district, the landowners in the district were obligated to pay the expenses of maintaining the improvements, Section 298.01, Florida Statutes 1953, and F.S.A., and that the damage to the plaintiff was the result of fulfilling *354 the obligation. Judgment was asked for the amount of the loss.
The circuit judge dismissed the complaint and entered judgment against the plaintiff and he appealed.
The appellant prefaces his argument by citing Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A., which vouchsafes to every person that he shall not be deprived of his property without just compensation and Section 4 of the Declaration of Rights providing that the courts shall be open "so that every person for any injury done him in his lands, [or] goods, * * * shall have remedy, by due course of law * * *." But he is frank to say that he is faced with Section 22 of Article III of the Florida Constitution, F.S.A., stipulating that "Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating," with the lack of such legislation, and with the decision in Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422.
We are met with the pivotal question whether or not a drainage district, such as appellee, may be sued in tort. It seems that no statute of this State authorizes an action like the one here involved. The appellant insists that the guarantees of the Constitution are self-operative, while the appellee contends that no right of action can be implied.
To support his position the appellant cites authorities of other states holding, in effect, that the constitutional inhibition against the unlawful taking of property for public use is not dependent upon legislative sanction because the legislature cannot abrogate a constitutional right, Tomasek v. State, 196 Or. 120, 248 P.2d 703; and that "`a constitutional provision'" that private property shall not be taken for public use without just compensation "`shall never be construed as dependent for its efficacy and operation upon the legislative will.'" Chick Springs Water Co. v. State Highway Department, 159 S.C. 481, 157 S.E. 842, 848; Swift & Company v. City of Newport News, 105 Va. 108, 52 S.E. 821, 3 L.R.A.,N.S., 404.
He also cites decisions from the supreme courts of Virginia, Nebraska and Georgia, but the constitution of each of these states contains express prohibition against "damage" to private property, without just compensation, a protection that does not, in terms, appear in the Constitution of Florida. Section 12, Declaration of Rights, supra.
We prefer the logic of the decisions that districts such as appellee are not responsible in tort actions in the absence of legislative authority for bringing suit against them and, by adopting the reasoning of the courts that rendered such decisions, we think a determination of the present controversy will harmonize with our opinion in Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422.
In Todd v. Kaw Valley Drainage Dist., Wyandotte County, 109 Kan. 754, 201 P. 1096, 1098, 33 A.L.R. 64, the court was dealing with an action by a workman against a drainage district, for injury alleged to have been suffered as a result of the negligence of his foreman while they were engaged in clearing the channel of a river. The organization of the district and the purpose of the organization were not unlike the creation and purpose of Lake Worth Drainage District. The court ruled point-blank that the district was a governmental agency upon which no liability for tort rested "there being no specific statutory provision to modify the general rule [of non-liability]."
Of like tenor was the decision of the Supreme Court of Arkansas in Board of Improvement of Sewer District No. 2 of Ft. Smith v. Moreland, 94 Ark. 380, 127 S.W. 469. The sole question was the liability of a sewer district for the death of a workman, said to have resulted from the negligence of the district, while he was engaged in constructing a sewer. The court styled such districts governmental agencies or public quasi corporations which are "`purely auxiliaries to the state'" with *355 no "`powers, duties, or liabilities except as conferred expressly by statute.'"
To the same effect is the opinion of the Supreme Court of Illinois in Elmore v. Drainage Commissioners, 135 Ill. 269, 25 N.E. 1010.
In the case of Arundel Corporation v. Griffin, supra, this court was considering an action that had been brought against a corporation and the Board of Commissioners of Everglades Drainage District for damages averred to have been caused plaintiffs by negligent drainage operations. The pivotal questions were whether or not the Board of Commissioners was subject to suit for tort, and whether or not the plaintiffs' lands had been taken for public purposes without compensation. The board was termed an agency of the state and a public quasi corporation and even though the board had been given the power to sue and be sued it was held that it was not responsible in tort, the court reasoning that if the State cannot be sued without its consent, and a county is not liable in tort for damages, an action against the board, a state agency, could not be maintained without legislative authority.
We revert to the decisions upon which the appellant relies to support his contention that his property has been taken without just compensation. In these cases the view was expressed that the constitutional guaranty that one's property may not be so taken cannot be thwarted by the lack of legislative authorization. It seems to us that this point was settled in this State thirty years ago, in the Arundel case, supra. Aside from the commitment of this court to the principle that the state or an agency of the state may not be sued without the state's consent, the provision that property shall not be taken does not seem to us apropos of the fundamental question with which we are now concerned. Appellant's crop was not taken by the state agency, Miller v. City of Palo Alto, 208 Cal. 74, 280 P. 108; it was destroyed and the destruction, if negligent, constituted a tort. And it is the tort for which the appellee is not under the law responsible because it was acting in a governmental capacity as a public corporation. Section 298.02, Florida Statutes 1953, and F.S.A.
The provision of the Declaration of Rights appropriate to this discussion is the mandate that courts shall be open, so that every person shall have remedy for injury done his property. But we cannot find the distinction between the application of that guaranty to cases where counties, cities and the Everglades Drainage District are involved and to a case like this one. If the doors of the court must now be opened to appellant they should have, by the same token, been required to be opened in the many cases reaching this court where cities and towns were held not liable despite the merits of the plaintiffs' claims. Wilford v. City of Jacksonville Beach, Fla., 79 So.2d 516.
Another allied question is inherent in this record, that is the practical problem of collecting. If the appellant were held to have the constitutional right to proceed and he obtained a judgment, how would he go about collecting it? The district has the power only to assess against lands within its boundaries assessments to accomplish an over-all drainage operation to make the lands within the whole area cultivable and keep them so. The assessments for main and subsidiary canals are made against the individual parcels of lands according to the benefit each parcel will receive from the project as a whole. Hearings are conducted so that any property owner aggrieved by the assessment may be heard. The financing of the improvement is based on the total assessment, the obligation undertaken to construct the project is discharged from the assessments paid. How could the district be coerced to pay any judgment obtained in a tort action except on the theory that by the commission of the tort the lands in the district were benefited? Campbell v. State ex rel. Garrett, 133 Fla. 638, 183 So. 340. This is so nebulous as not to warrant further exploration.
We are firm in the view that the appellant cannot prevail.
Affirmed.
*356 DREW, C.J., and HOBSON, J., concur.
THORNAL, J., concurs specially.
THORNAL, Justice (concurring specially).
I concur in affirmance for the reason announced by the concluding paragraph of the main opinion. The General Drainage District Act, Chapter 298, Florida Statutes, F.S.A., authorizes the levying of taxes for specific purposes stipulated in the Act. These are limited strictly to the improvement and maintenance of the drainage district and the taxing power of the Board of Supervisors cannot be exercised for any other purpose  general or special. See Campbell v. State, 133 Fla. 638, 183 So. 340. To this extent it can safely be concluded that it was not contemplated by the Legislature that a drainage district organized under the Act could be compelled to respond in damages for a tort or forced to levy taxes for this purpose.
I do not agree that a drainage district under Chapter 298, supra, is either a state agency or is entitled to enjoy the immunities granted to state agencies. This is so primarily because the method of electing the Board of Supervisors under Sections 298.11 and 298.12, Florida Statutes, F.S.A., does not meet the requirements of Article III, Section 27, for selecting State officers. In my view such a district is more nearly a municipal organization rather than an agency of the State. See Ronald v. Ryan, 1946, 157 Fla. 470, 26 So.2d 339. The case of Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422, dealt with the Board of Commissioners of the Everglades Drainage District under Chapter 6456, Acts of 1913. This board consisted of five elected members of the state cabinet who were constitutional state officers.
For the reason stated above, however, I concur in the conclusion for affirmance.

On Rehearing.
PER CURIAM.
A rehearing having been granted in this cause and the case having been further considered upon the record and upon briefs and argument of counsel for the respective parties; it is thereupon ordered and adjudged by the Court that the opinion of this Court filed July 1, 1955, be and it is hereby reaffirmed and adhered to on rehearing.
DREW, C.J., and TERRELL, THOMAS, HOBSON, ROBERTS, THORNAL and SEBRING, JJ., concur.