312 So.2d 487 (1975)
Henry S. KIRKPATRICK and Edith B. Kirkpatrick, His Wife, Appellants,
v.
CITY OF JACKSONVILLE, through Its DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, a Municipal Corporation, Appellee.
No. W-180.
District Court of Appeal of Florida, First District.
May 12, 1975.
Rehearing Denied June 5, 1975.
*488 Tom C. Meers, Jacksonville, for appellants.
Herbert R. Kanning, Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, and Thomas E. Crowder, Jacksonville, for appellee.
PER CURIAM.
Appellants, plaintiffs below, appeal an order of the trial court dismissing their second amended complaint with prejudice. The sole question which we must resolve is whether the complaint as amended states a cause of action based on the theory of inverse condemnation.[1]
Appellants' second amended complaint alleges that the City of Jacksonville, acting through its Department of Housing and Urban Development, totally destroyed their buildings located on property owned by them. The complaint further alleges: "At no time did any such dwelling contain any defect or deficiency therein or thereon which would materially jeopardize or adversely affect the health of (sic) safety of any person. At no time prior to the demolition or removal of the said buildings did the defendant ever serve the plaintiffs with any notice of their intentions to demolish or remove the same, but have now caused a lien to be recorded against plaintiffs' aforesaid real estate for the cost of having effected such demolition and removal." In their prayer for relief, appellants requested that the appellee be required to exercise its right of eminent domain as a means of making restitution.
In a landmark decision, this Court determined that inverse condemnation would be upheld as a legally recognizable cause of action. (City of Jacksonville v. Schumann, Fla.App. 1st 1964, 167 So.2d 95, cert. den. Sup.Ct.Fla. 1965, 172 So.2d 597) In the Schumann case, we stated the following:
"Inverse condemnation has been defined as the popular description of a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (1962); Martin v. Port of Seattle, 391 P.2d 540 (Wash. 1964). To the same effect but using different words, the New York Supreme Court, Appellate Division, in Trippe v. Port of New York Authority, 17 A.D.2d 472, 236 N.Y.S.2d 312 (1962) said that inverse condemnation is a method of compensation wherein `an owner asserting a claim for appropriation of his property may pursue his right by an action in equity for an injunction, and for damages; the court may then, as an alternative to the injunction, make an award for the taking * * *." (167 So.2d at pages 98-99)
Although recognizing that a cause of action for inverse condemnation will lie, both appellee and the trial court in its order dismissing appellants' second amended complaint, citing White v. Pinellas County, Fla.App.2d 1965, 174 So.2d 88, assert that the present case is barred by the one-year *489 statute of limitations pertaining to actions against a county (F.S. 95.08) because the complaint manifests no taking for a public purpose as required by the law of eminent domain but indicates a mere trespass.[2] Further research, however, reveals that the Florida Supreme Court quashed the Second District Court's opinion in White v. Pinellas County, Sup.Ct.Fla. 1966, 185 So.2d 468. The Supreme Court there quoted with approval the following passage from State Road Department of Fla. v. Tharp, 1941, 146 Fla. 745, 1 So.2d 868:
"If a State agency can deliberately trespass on and destroy the property of the citizen in the manner shown to have been done here and then be relieved from making restitution on the plea of nonliability of the State for suit, then the constitutional guarantee of the right to own and dispose of property becomes nothing more than the tinkling of empty words. Such a holding would raise administrative boards above the law and clothe them with an air of megalomania that would eternally jeopardize the property right of the citizens. It would reverse the order of democracy in this country and head it into a blind alley.
"American democracy is a distinct departure from other democracy in that we place the emphasis on the individual and protect him in his personal property rights against the State and all other assailants." (185 So.2d at pages 470-471)
Thus, an aggrieved property owner whose real or personal property has been destroyed by unwarranted governmental action may institute a proceeding to compel the governmental body to exercise its power of eminent domain and award just compensation to the owner. Yet, appellee paradoxically argues that there can be no exercise of its eminent domain power in the case sub judice because there has not been a "taking" for a "public purpose" but only total destruction which can serve no purpose at all. Surely appellee is not arguing before this Court that it had no "public purpose" when it demolished appellants' buildings. We are loath to interpret appellee's argument to mean that the City destroyed the buildings maliciously and with no teleological motive. We presume instead that appellee intends that its argument be interpreted to mean that the purely negative act of total destruction cannot be included within the definition of the phrase "taking for a public purpose."
The distinction is made between "taking" and "damage": Compensation to the owner required as to the former, but not as to the latter. The distinction is valid but does not necessarily prohibit appellants from recovering herein. "Taking" has been defined as "entering upon private property for more than a momentary period and `under the warrant or color of legal authority,' devoting it to public use or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." 12 Fla.Jur. 48, Eminent Domain, § 68 (emphasis added). The courts have found "damages" to mean that "they are simply the consequences of a legal act, and therefore not a basis of recovery in the courts, nor of a lawful claim for compensation". (Seldon v. City of Jacksonville, 1891, 28 Fla. 558, 10 So. 457) They come about as a result of no direct physical invasion. (Arundel Corporation v. Griffin, 1925, 89 Fla. 128, 103 So. 422)
Sub judice, however, the complaint clearly alleges that the buildings were destroyed by the City which could have only resulted from a direct physical invasion. *490 The complaint also alleges an illegal act by the City when it demolished appellants' buildings without proper notice. (Rowland v. State, 1937, 129 Fla. 662, 176 So. 545) It should also be noted that a "taking" may consist of an entirely negative act, such as destruction. (See cases cited in 26 Am.Jur.2d, Emminent Domain, § 157)
White v. Pinellas County, supra, supports the sufficiency of appellant's second amended complaint. We point out, however, that in White the Supreme Court set out several elements of fact which it stated must be determined by the jury in that case. One of the elements was whether "the action of respondent's agents was taken `pursuant to a planned program of highway improvement.'" There such quoted element was alleged by the plaintiff and was, therefore, a necessary element of proof for the plaintiff. Here, as aforesaid, appellee City contends, among other things, that appellant's complaint does not allege that the taking (or destruction) was for a public purpose and that such is a necessary allegation because condemnation does not lie unless the taking is for a public purpose. In a condemnation suit, as distinguished from an inverse condemnation suit, in order to take property, the condemning authority must allege in its petition and prove, if required to do so by the written defense of the landowner, that the taking is for a public purpose. If appellee here has, without authority, taken appellant's property, it is a strange position for appellee to now in effect say, "Yes, I took your property, but I did not do it for a public purpose and, therefore, I am not required by the Constitution to compensate you for it." § 6 of Article X of the Constitution of the State of Florida is the landowner's protection against a summary taking of his property without compensation by the state or by authority of the state. Paragraph (a) of that section provides as follows:
"No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."
The proviso that a landowner's property may be taken from him only "for a public purpose" is for the landowner's protection and is not placed in the Constitution as a sword to be used against the landowner when the state has summarily taken his property without due process. If in a condemnation action the landowner does not file written defenses to the condemnor's petition denying that the taking of the property is necessary for a public purpose (see § 73.021(1) and 73.051, Florida Statutes), he is deemed to have admitted such allegation. (See Rule 1.110(e), Florida Civil Procedure Rules.) A landowner in a condemnation suit brought against him may thus waive the requirement that the condemning authority prove that the taking is for a public purpose. If he can waive this requirement in a condemnation suit brought against him, certainly he cannot be required to prove in an inverse condemnation action brought after the condemning authority has taken his property without due process that such taking was for a public purpose.
We look here only to the sufficiency of the complaint without any consideration of whether or not appellee, in allegedly destroying appellant's property, acted in the exercise of valid police power. We consider such to be an affirmative defense and we do not here consider whether or not the City may have any other valid defense.
Reversed and remanded for further proceedings consistent herewith.
RAWLS, C.J., and BOYER and McCORD, JJ., concur.
NOTES
[1] See Dawson v. Blue Cross Association, Fla.App.1st 1974, 293 So.2d 90.
[2] The Florida Supreme Court has held that the pertinent one-year statute of limitation would not preclude an action for an equitable remedy to recover compensation for property unlawfully taken by a county. Hillsborough County v. Kensett, 1932, 107 Fla. 237, 144 So. 393. Thus, the one-year statute of limitations would apply to a trespass action but not to an action based on inverse condemnation.