109 So.2d 388 (1959)
CITY OF ST. PETERSBURG, a Municipal Corporation, Appellant,
v.
Thomas G. EARLE et al., Appellees.
No. 847.
District Court of Appeal of Florida. Second District.
January 30, 1959.
Rehearing Denied February 18, 1959.
*389 Harry I. Young, Lewis T. Wray, Frank D. McDevitt, and Carl R. Linn, St. Petersburg, for appellant.
J.C. Davant, Clearwater, for appellees.
SHANNON, Judge.
Appellant, as defendant in the court below, was sued by the appellees in the Circuit Court of Hillsborough County for an injunction and for damages arising from the pumping of water from its well field located in the County of Hillsborough, of which county the appellees were residents. The defendant filed a motion to dismiss on the following grounds:
"1. That the Court lacks jurisdiction over the subject matter.
"2. That the Court lacks jurisdiction over the City of St. Petersburg, a Municipal Corporation, located in Pinellas County, Florida."
The chancellor in his order stated in part:
"This Court is going to treat the second ground stated in the motion to dismiss, to-wit: `that the Court lacks jurisdiction over the City of St. Petersburg, a municipal corporation, located in Pinellas County, Florida,' as though it were a motion which sets up the question of improper venue."
The chancellor also in his order found that the present case would be governed by the rule laid down in Williams v. City of Lake City, Fla. 1953, 62 So.2d 732, wherein was cited with approval the case of Piercy v. Johnson City, 130 Tenn. 231, 169 S.W. 765, L.R.A. 1915F, 1029. The court in Williams v. City of Lake City, supra, held that unless there is a valid statute changing the rule, a municipal corporation had to be sued in the county in which it was situated. However, the chancellor's order goes on to say:
"* * * that under the charter of the City of St. Petersburg there was an express provision which allowed the city in any suit where the court had jurisdiction to sue and be sued in any court in the state and in all matters whatsoever. The charter of the city of St. Petersburg is found in Chapter 15,505, of [Sp.] Laws of Florida [1931], and the first section of that chapter reads: `The inhabitants of the City of St. Petersburg, Florida, within the boundaries hereinafter designated, or within such boundaries as may hereafter be established, shall continue to be a body politic and corporate under the name "City of St. Petersburg", and as such shall have perpetual succession, may use a common seal, may contract and be contracted with, and may sue and be sued and be impleaded in all the courts of this State and be in all matters whatsoever' * * *. The claim is made here that the language of the charter of St. Petersburg above quoted nullifies or qualifies the general rule as stated in Williams v. Lake City. I think this claim is well founded and that under that statute, which is Section 1 of the charter of St. Petersburg, and under the case of Lakeland Ideal Farm and Drainage District v. Mitchell, 97 Fla. 890, 122 So. 516, that the *390 venue in the instant case is properly placed in Hillsborough County, Florida."
In other words, the chancellor held that absent the cited language of the St. Petersburg charter, the present suit would have to be brought in Pinellas County, Florida, and grounded his decision on this facet of the case.
For the purpose of reviewing the chancellor's order, it is necessary that we take up, in the first instance, where this case should have been brought originally and in the second place, assuming that it should have been brought in Pinellas County, does the language of the charter of St. Petersburg, "and may sue and be sued and be impleaded in all the courts of this State and in all matters whatsoever," give the plaintiffs the choice of two counties in which to sue?
We realize, as the chancellor below did, that the courts of various states have ruled both ways on this question. However, when the Florida case of Williams v. City of Lake City, supra, and the cases from other courts which are cited with approval are reviewed, there can be no question of where it should have been brought in the first instance. The defendant takes the position that the question is jurisdictional, while the plaintiffs urge that it is a question of venue. It is unnecessary that we decide this question in the instant case, and we do not. A majority of the cases from other states cited by the parties are concerned with a transitory cause of action, although in some of the cases it is a local one.
In the case of Williams v. City of Lake City, supra, which was decided by the Supreme Court of Florida in 1953, a tort claim was filed making Lake City a joint defendant in Duval County, Lake City being in Columbia County, and a motion was filed in Circuit Court to dismiss the complaint because of improper venue, the court sustained the motion to dismiss and Justice Drew, speaking for the court, had this to say, in part [62 So.2d 734]:
"Section 2.01, F.S.A., provides that the common and statute laws of England of a general nature down to July 4, 1776  not inconsistent with the constitution and laws of the United States or of this State  are in force.
"Under the common law no action could be brought against a municipal corporation outside the county where it was situated, unless an express statute authorized it to be sued elsewhere. Marshall v. Kansas City, 95 Kan. 548, 148 P. 637, L.R.A. 1915F, 1025; City of Jackson v. Wallace, 189 Miss. 252, 196 So. 223; 38 Am.Jur. 420, Par. 716. The appellant contends, however, that Sections 46.01 and 46.02, F.S.A., which read as follows:
"`46.01 Where suits may be begun. Suits shall be begun only in the county (or if the suit is in the justice of the peace court in the justice's district) where the defendant resides, or where the cause of action accrued, or where the property in litigation is located.
"`If brought in any county or justice district where the defendant does not reside, the plaintiff, or some person in his behalf, shall make and file with the praecipe or bill in chancery, an affidavit that the suit is brought in good faith, and with no intention to annoy the defendant. This section shall not apply to suits against nonresidents.
"`46.02 Suits against defendants residing in different counties or districts. Suits against two or more defendants residing in different counties (or justices' districts) may be brought in any county or district in which any defendant resides.'
are inconsistent with the common law on the subject under the facts in this case, and that she is authorized to maintain this action in Duval County. We are not impressed by this argument. The majority of the courts have held that actions against municipal corporations *391 are inherently local and that they must be sued in the county in which they are located. While we recognize that there are authorities to the contrary, we believe this rule is based on logic and reason and is the better rule."
* * * * * *
"This appears to be the rule in the United States Courts, in Alabama, California, Georgia, Kansas, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Ohio, Pennsylvania, Tennessee, Texas, Washington and West Virginia. The theory upon which this rule is founded is set forth in the case of Nashville v. Webb, 114 Tenn. 432, 85 S.W. 404, 405, 4 Ann.Cas. 1169.
"In that case, plaintiff brought suit against Nashville and others in Wilson County for personal injuries by reason of a defective sidewalk in the City of Nashville  Nashville is located in Davidson County. The city filed no answer, although service was obtained upon its Mayor. Judgment was entered in behalf of the plaintiff for $4,000. Execution was issued and placed in the funds (sic) of the Sheriff and the City of Nashville brought suit to enjoin the execution on the grounds that the suit should have been brought in Davidson County. The Circuit Court granted the injunction and the Supreme Court affirmed it. The Court used this language:
"`* * * But actions against municipal corporations are inherently local. These bodies cannot change their situs or their place of abode. They cannot remove from one place to another, and sojourn for a time at this point or that. They remain stationary; hence they must be sued where they are found  that is, in the county of their location. It is a misnomer, a misapplication of terms, to speak of an action against such a body as transitory, no matter what the ground may be on which the right of action rests. Such actions are not only inherently local, but it is of the greatest importance to the welfare of such bodies and of the citizens whom they serve, that their officers should be permitted to remain at home and discharge their public duties, instead of being called hither and thither over different parts of the state to attend to litigation brought against the city through the agency of counterpart writs.'"
It will be noticed that the language of Justice Drew, as well as the language in Nashville v. Webb, supra, speaks of an action against a municipal corporation as being inherently local. For instance in the Webb case there was no defense by the City of Nashville and a default and final judgment were entered against it. The rationale of that case is that the question was necessarily jurisdictional, a question which we do not decide in the present case.
Justice Drew cites with approval Piercy v. City of Johnson City, supra [130 Tenn. 231, 169 S.W. 766], and it is necessary that we take that case into consideration. In that case, as in the present case, the plaintiff was suing the city "in an action of damages caused to his land in Unicoi county by the diversion of the waters of two large springs out of their natural channel and away from his land below." The plaintiff had brought his suit in Unicoi County, whereas the City of Johnson City was in another county. In holding that the defendant should be sued in the county in which it was located, the Supreme Court of Tennessee in its decision treated the problem of the local nature of the action as follows:
"We need not discuss or decide whether the action for damages to realty growing out of the diversion of the flow of water from the springs is one transitory or local in character, as to which see Nashville, C. & St. L. Railway v. Weaks, 13 Lea (81 Tenn.) *392 148, 149, and Mattix v. Swepston, 127 Tenn. 693, 155 S.W. 928.
"If we assume, and proceed on that basis, that an action for injury to realty is local in character, then we have two rules, seemingly applicable, which are in opposition, the one to the other. The first would remit the party plaintiff for action to Washington county in which is located the municipality to be subjected to liability, the other to Unicoi county where the land is situated.
"Which of the two rules should be declared paramount?
"While it must be admitted that it is held in a great majority of English and American cases that an action for damages to real property is local, that doctrine was established over the opinion of Lord Mansfield to the contrary (Mostyne v. Fabrigas, Cowp., 161) and the views of Chief Justice Marshall in Livingston v. Jefferson, Fed.Cas.No. 8,411, 1 Brock 203. In arguing against the soundness of the rule Chief Justice Marshall there said touching the lack of reason to support it: `I have yet to discern a reason other than a technical one which can satisfy my judgment.'
"On the other hand the reason for the rule in respect of actions against municipal corporations being local are far from being technical. This court in the case of Nashville v. Webb, 114 Tenn. 432, 85 S.W. 404, 4 Ann.Cas. 1169, speaking through the present Chief Justice, said:
"`It is a misnomer, a misapplication of terms, to speak of an action against such a body as transitory, no matter what the ground may be on which the right of action rests. Such actions are not only inherently local, but it is of the greatest importance to the welfare of such bodies, and of the citizens whom they serve, that their officers should be permitted to remain at home and discharge their public duties, instead of being called hither and thither over different parts of the state to attend to litigation brought against the city.'
"It is thus seen that the ruling is based on public policy. The Maryland court, which ruled as above, indicated in Baltimore v. Meredith, etc., Turnpike Co., supra [104 Md. 351, 65 A. 35], in the later case of Phillips v. City of Baltimore, 110 Md. 431, 72 A. 902, 25 L.R.A.,N.S., 711, in which was involved a transitory cause of action, expressly gave assent to the view that considerations of public policy forbid the maintenance of such actions in a county other than that of the municipality, thus:
"`The principle that is involved is that of inconvenience to the exercise of the sovereign authority delegated by the state to its municipal corporations, upon the ground that if they are to be subjected to suit in any and every part of the state, such suits must inevitably hinder and delay the successful conduct of the functions of government.'
"A contrast of the reasons that underlie the respective rules here under consideration makes manifest to which of them should be given the award of paramountcy. The one based on mere technical grounds or, at most, on considerations of the convenience of private individuals must, we hold, yield to the other founded on public policy as well as public convenience."
We can see no difference between the present case and the case of Piercy v. Johnson City, supra, except that in the Piercy case no equitable relief was sought against the city, and, "Owing to the fact that courts of equity act in personam rather than in rem, the rules relating to the venue of local actions at law do not apply with their full rigidity to suits in equity." 56 Am.Jur., Venue, Section 21.
*393 The chancellor ruled, in a portion of his final order, in consonance with the decision of Williams v. Lake City, supra, and in so doing he was correct, in view of the language used by our Supreme Court, and also by following the decision in Piercy v. Johnson City, supra.
The plaintiffs urge that Section 46.01, Florida Statutes, F.S.A., gives them the right to bring this action in the county where the property involved is located. The pertinent portions of the statute read:
"Suits shall be begun only in the county (or if the suit is in the justice of the peace court in the justice's district) where the defendant resides, or where the cause of action accrued, or where the property in litigation is located."
However, it is well recognized that this statute does not give an absolute right to sue in any of the three mentioned venues, but the word "only" would indicate that it is rather a limitation on possible proper venues. The statute is further limited by various other statutes (see F.S. §§ 66.02, 66.41, F.S.A.), and by common-law rules. One example is seen in Lakeland Ideal Farm and Drainage District v. Mitchell, 97 Fla. 890, 122 So. 516, where the plaintiff was not allowed to bring suit where the defendant resided because of the "local action" common-law rule.
We come now to that portion of the chancellor's order overruling the motion to dismiss because the charter provisions of the City of St. Petersburg state that it "may sue and be sued and be impleaded in all the courts of this State and in all matters whatsoever." A vast majority of the charters of municipal corporations still retain in them such language as is in the present charter. A plain reading of the paragraph in question would lead to the conclusion that it is merely that general, very broad, enabling provision found in varying forms in every city charter, which allows, or purports to allow the city to function as a corporate entity. Common sense would indicate that it was not the legislative intent to include as particular and technical a subject as venue in so general a paragraph. We can give several other reasons avoiding such a construction of the charter; as, for instance, that the language used should not be construed so as to abrogate a rule of common law if another equally valid interpretation is available, particularly if the alternative construction is less strained, and it could be reasoned that the words "all the courts of this state" could refer to types of courts as well as their location. Again, we might say that the chancellor's interpretation would raise serious doubts as to the charter's constitutionality in view of Article III, Section 20, Florida Constitution, F.S.A., prohibiting local laws "providing for changing venue of civil and criminal cases," and a construction rendering an act unconstitutional is always avoided, if possible.
In the Williams v. Lake City case, supra, it was stated that in order to sue a municipal corporation in another county it was necessary that there be an express statute authorizing it to be so sued. It is, to us, evident and we think, common sense, to hold that an act, in order to change the common law, must clearly express that intention. The language used in the charter of St. Petersburg does not express, either directly or indirectly, any intention on the part of the legislature to change the common law in regard to actions against municipalities. The language used in the charter is simply a holdingover, although no longer necessary, of the right of a municipality to sue and be sued generally.
In addition to what we have just said the language in any legislation is to be construed with the particular act of which it is a part. For instance, in the case of Spangler v. Florida State Turnpike Authority, Fla. 1958, 106 So.2d 421, 423, Justice Thornal, in writing the opinion for the court, said:

*394 "It is true that in generally defining the powers of the Authority by Section 340.06, Florida Statutes, F.S.A., the Legislature has provided that it has the power `to sue and be sued in its own name'. Nevertheless, consistent with our own precedents as well as analogous decisions of other states, we are of the view that this general provision included in the delineation of the Authority's powers is not adequate in and of itself to constitute a waiver of immunity from liability for tort. We have specifically so held with reference to counties. Section 125.01, Florida Statutes, F.S.A., provides that county commissioners shall represent the county `in the prosecution and defense of all legal causes'. Section 125.15, Florida Statutes, F.S.A., provides that `The county commissioners of the several counties shall sue and be sued in the name of the county of which they are commissioners.' Despite this general language in the legislative statement of the powers of the counties, we have held throughout the years that a county which is a division of the State shares in the State's immunity from liability in tort actions. See Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372.
"In similar fashion, despite the fact that the Everglades Drainage District is endowed by statute with the power `to sue and be sued', we have also held that this legislative provision is not sufficient to constitute a waiver of immunity of this state agency from liability for damages in a tort action. Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422. Consistent with these earlier rulings this court has held that a Drainage District organized under the general Drainage District Act, Chapter 298, Florida Statutes, F.S.A., is similarly immune to liability for damages resulting from an alleged tort. Rabin v. Lake Worth Drainage District, Fla. 1955, 82 So.2d 353. * * *"
While the Spangler case is not directly in point with the present case, the language used indicates the Supreme Court's thinking on this general subject.
For the reason stated, the motion to dismiss should have been granted.
Reversed.
KANNER, C.J., and ALLEN, J., concur.