QUESTIONS: 1. Are documentary stamp taxes and surtaxes due under Ch. 201, F.S., on the assignment or other conveyance of an existing long-term lease of real property? 2. Is an obligation to pay money secured by a mortgage encumbering such a long-term lease on real property subject to the nonrecurring two mill intangible tax under s. 199.032(2), F.S.? 3. Would the owner and holder of such a long-term leasehold, upon which there had been constructed a dwelling house which constitutes a person's permanent residence, be entitled to the homestead tax exemption under Art. VII, s. 6, State Const.?
SUMMARY: The assignment or other conveyance of a leasehold interest for present consideration is subject to the documentary stamp tax and surtax under ss. 201.02 and 201.021, F.S. An obligation for the payment of money secured by mortgage on such leasehold constitutes an obligation secured by a mortgage on personalty and, thus, is subject to annual taxation under s. 199.032(1), F.S., rather than the nonrecurring two mill tax under s. 199.032(2). The interest of the holder of such leasehold, upon which has been constructed a private dwelling, is not a legal or equitable title to the real estate and, hence, cannot support a claim for homestead exemption under Art. VII, s. 6, State Const., or s. 196.031, F.S. The particular long-term leaseholds involved are those initially derived from the Santa Rosa Island Authority. While the basic substance of the questions presented herein was earlier treated in AGO 060-56, the present opinion request concerns certain factors, having arisen in the intervening period of time, which may have a material effect on the conclusions reached in AGO 060-56. First, AGO 060-56 ruled that the initial conveyance of the leasehold interest from the authority to private lessees was not subject to the assessment of documentary stamps under s. 201.02, F.S., based on the decision in DeVore v. Gay,39 So.2d 796 (Fla. 1949). Such leaseholds, however, are now being assigned or otherwise conveyed by the lessees for consideration clearly having a reasonably determinable pecuniary value. Question 1 is directed to the taxation under Ch. 201, F.S., of such assignments or other conveyances. Secondly, questions 2 and 3 take into account the implications to be derived from the legislative treatment of these leaseholds as an interest in realty for the purpose of ad valorem real property taxation. See Straughn v. Camp, 293 So.2d 689 (Fla. 1974). Such tax treatment was not accorded these leaseholds at the time of the earlier opinion. As to question 1, relative to the application of the documentary tax to leaseholds, the Florida Supreme Court has clearly ruled that the conveyance of a leasehold interest in real property is within the purview of s. 201.02, F.S. Section 201.02, F.S., provides: (1) On deeds, instruments, or writings whereby any lands, tenements, or other realty, or any interest therein, shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, on each one hundred dollars of the consideration therefor the tax shall be thirty cents. When the full amount of the consideration for the execution, assignment, transfer, or conveyance is not shown in the face of such deed, instrument, document, or writing, the tax shall be at the rate of thirty cents for each one hundred dollars or fractional part thereof of the consideration therefor. (Emphasis supplied.) The surtax under s. 201.021, F.S., is assessed against those documents taxed by s. 201.02, F.S., at the rate of fifty-five cents per five hundred dollars of consideration, with consideration being deemed to be exclusive of existing mortgages on the property conveyed. In Dundee Corporation v. Lee, 24 So.2d 234, 235 (Fla. 1945), the court, in construing the application of Ch. 201, F.S., to a ninetynine year lease, noted: "Certainly a ninety-nine year lease must convey some kind of `interest' in land." In DeVore v. Lee, 30 So.2d 924, 926 (Fla. 1947), the court, in construing the application of Ch. 201, F.S., to short-term leases of two to three years, noted: . . . we shall go one step farther and say that they are taxable under Section201.02 as involving an interest in land. Not only is this view sustained by some of the authorities we have already cited, but it is also bolstered by the following decisions of this court: Rogers v. Martin, 87 Fla. 204, 99 So. 551; Baker v. Clifford-Mathew Investment Company, 99 Fla. 1229, 128 So. 827; Gibson v. Longino,111 Fla. 533, 149 So. 592. Finally, the court in DeVore v. Gay,39 So.2d 796 (Fla. 1949), again noted "that leases as a class come within the terms of F.S. s. 201.02." The court went on, however, to conclude that from the terms of the lease at issue therein the only considerations passing from the lessees to the lessors were the lessees' promises in future to pay rent. The court concluded: When taxes are to be levied according to a monetary consideration, the law contemplates that such tax should be confined to the actual monetary considerations or to considerations which have a reasonably determinable pecuniary value. The sole considerations passing to the lessors for the leases were executory considerations. Such leases were not taxable under Section 201.02, F.S., 1941, F.S.A. (Supra, at 797.) Applying these factors to the instant matter, the initial longterm leases from the Santa Rosa Island Authority to the private lessees, in that they provide, as noted in AGO 060-56, for annual rental payments during the term of the lease, would not be taxable under s. 201.02, F.S. However, any assignment or conveyance of such existing leases for a present consideration, including the assumption of or taking subject to a mortgage, would require documentary stamps under s. 201.02 based upon the full amount of such consideration. Surtax under s. 201.021, supra, would likewise be fully applicable to the actual consideration, exclusive of existing mortgages. Your first question, based upon the foregoing, is therefore answered in the affirmative. The answer to your second question requires an overview of the history of the nonrecurring two mill intangible tax. The first separate Intangible Tax Act was adopted by the legislature in 1931. This act, Ch. 15789, 1931, Laws of Florida, provided for three classes of intangibles: A, B, and C. Class A intangibles consisted of stock, shares of incorporated or unincorporated companies, and non-exempt bonds. Class B intangibles were defined as: . . . all notes, bonds and other obligations for the payment of money which are secured by mortgage, deed of trust, or other leases or liens upon real or personal estates situated in Florida, . . . . (Emphasis supplied.) Finally, Class C intangibles consisted of all items of intangible personalty not embraced in Classes A or B. Under the 1931 act annual returns were required of all classes of intangibles with the appropriate tax paid directly to the county tax collector. In 1941, the legislature enacted a new Intangible Tax Act, Ch. 20724, 1941, Laws of Florida, which included a repeal of the 1931 act. This new act divided intangible personal property into four categories, Classes A, B, C, and D, and altered the manner in which certain of the intangibles were taxed. Class A property was defined as money. Class B intangibles included stock, shares of incorporated or unincorporated companies, nonexempt bonds and all of the secured notes, bonds, and other obligations formerly taxed under the definition of Class B property under the 1931 act provided such intangibles bore a date prior to January 1, 1942. Class C property was defined as: . . . notes, bonds and other obligations bearing date subsequent to December 31, 1941, for payment of money which are secured by mortgage, deed of trust or other liens upon real property situated in Florida, . . . . (Emphasis supplied.) Finally, Class D was made the "catch all" provision, taxing those intangibles not within the definition of Classes A, B, and C. An annual return of Class A, B, and D intangibles, was required, but Class C intangibles were taxed at a one-time rate of three mills payable before the mortgage, deed of trust, or other lien was presented for recordation. In 1944 a constitutional amendment was ratified which incorporated this method of taxing Class C intangibles into Art. IX, s. 1, State Const. 1885. This amendment provided in part: . . . as to any obligations secured by mortgage, deed of trust or other lien, the Legislature may prescribe an intangible tax of not more than two (2) mills on the dollar, which shall be payable at the time such mortgage, deed of trust or other lien is presented for recordation, said tax to be in lieu of all other intangible assessments on such obligations. The situation such series of changes presented was that under the 1944 constitutional amendment, the nonrecurring two mill tax could be assessed against an obligation secured by a mortgage, deed of trust, or other lien on either realty or personalty. The legislature, however, in its statutory implementation clearly limited such nonrecurring two mill tax to those obligations secured by a mortgage, deed of trust, or other lien "upon real property situated in Florida." See Ch. 22867, 1945, Laws of Florida, which retained the same Class C definition as the 1941 act. Thus, while the 1944 constitutional amendment would appear to have permitted the imposition of a nonrecurring two mill tax against a class of secured obligations as broadly defined as the original 1931 Class B definition, the legislature clearly rejected such an expansive application by virtue of its statutory definition of Class C intangibles. While an obligation secured by a mortgage upon a leasehold clearly fell within the definition of a Class B intangible under the 1931 act, its status as a Class C intangible subsequent to the 1941 legislative changes, given the more restrictive definition under the latter class, was in doubt. In 1947 this issue was squarely treated in AGO 047-201, July 15, 1947, Biennial Report of the Attorney General, 1947-1948, p. 243. Such opinion held that a leasehold estate is, under common law, a chattel real or personalty. Hence, a mortgage upon a leasehold is a mortgage on personalty and an obligation secured by such does not fall within the definition of Class C intangibles. Such a construction was again followed in AGO 060-56. See also AGO's 058-59, 065-20, and 067-74. Indeed, such has been the longstanding administrative interpretation placed on this class of secured obligations. In 1968 with the adoption of the new State Constitution, the former Art. IX, s. 1, State Const. 1885 was, in basic substance, continued in Art. VII, s. 2, State Const. The new Constitution, however, was no longer silent on the question of whether the two mill tax may apply to obligations secured by mortgage, deed of trust, or other lien on either realty or personalty. This new section provided: . . . as to any obligation secured by mortgage, deed of trust, or other lien on real estate wherever located, an intangible tax of not more than two mills on the dollar may be levied by law to be in lieu of all other intangible assessments on such obligations. (Emphasis supplied.) Subsequent to the enactment of the new Constitution, the Intangible Tax Act was repealed and reenacted by Ch. 71-134, Laws of Florida. The legislature, with full knowledge of the prior interpretations placed upon Class C intangibles, continued the same treatment of such intangibles, deleting, however, the Class C designation. The present statute, s. 199.032(2), F.S., provides for: A nonrecurring tax of two mills on the dollar of the just valuation of all notes, bonds and other obligations for payment of money, which are secured by mortgage, deed of trust or other lien upon real property situated in the state. (Emphasis supplied.) Since 1947 the treatment of obligations secured by a mortgage on a leasehold has been the same; they are not subject to the nonrecurring two mill tax since a leasehold under common law constitutes a species of personalty. Numerous sessions of the legislature have met since 1947 and numerous changes have been made in the intangible tax, including at least two complete revisions thereof, but not once has any attempt been made to alter the treatment such obligations secured by mortgages upon leaseholds have historically received. Since the legislature cannot be deemed to have mandated, either expressly or impliedly, within the confines of Ch. 199, F.S., a change in the longstanding administrative treatment of obligations secured by a mortgage upon a leasehold, it must then be determined whether the common law upon which such administrative treatment is grounded remains in force. For to deem obligations secured by mortgages upon leaseholds as within the provisions of s. 199.032(2) would require a finding that the common law in this state regarding the denomination of leaseholds as personalty has been abrogated. Section 2.01, F.S., declares the common law to be in force in this state except where inconsistent with the Constitution and laws of the United States or the State of Florida. In order to change the common law, a legislative enactment "must clearly express that intention." City of St. Petersburg v. Earle,109 So.2d 388, 393 (2 D.C.A. Fla., 1959). Indeed, as was noted in Dudly v. Harrison, McCready and Company, 173 So. 820, 823 (Fla. 1937): . . . statutes will not be held to have changed wellsettled common law principles by implication unless the implication is clear, or is necessary to give the express provisions of the statute, and the public policy thus established, full force and effect. Applying these factors to the instant matter, I do not find any enactments of the legislature in which there is, clearly expressed or implied, the intention to abrogate for all purposes the common law treatment of leaseholds as chattels real or personalty. I am not unmindful of the fact that certain leaseholds are treated as realty for the purpose of ad valorem real property taxation, including the leaseholds involved herein. See Straughn v. Camp, 293 So.2d 689 (Fla. 1974). Such treatment, however, is accorded only those leaseholds derived from government entities and which the lessee is utilizing for nongovernmental and nonexempt purposes. To construe this limited exception, applicable only to ad valorem real property taxes, to mean that such leaseholds now constitute realty for all purposes would do violence to the above-mentioned rules concerning statutory changes of the common law, as well as secure a most inconsistent result. Carried to its logical extreme, this would result in all leaseholds from governmental entities within the purview of s. 196.001(2), F.S., being realty but all other leaseholds, including all those derived from private individuals or businesses, being personalty. Hence, the application of the nonrecurring two mill intangible tax would depend solely upon the question of who is the lessor under the mortgaged lease and the dividing line between realty and personalty would become, not a factor inherent in the nature of the property itself, but, rather, the wholly extraneous factor of the parties to the leasehold agreement. Since, of course, guiding principles of statutory construction require the avoidance of interpretations producing unreasonable, unjust, or illogical results when an alternative interpretation is available, the view that the ad valorem real property tax treatment of these leases has altered their status as personalty for purposes of s. 199.032(2), F.S., must be rejected. Also, I am not unmindful of the fact that a note secured by a mortgage or deed of trust encumbering certain gas and oil leases on land in Florida was deemed subject to the nonrecurring two mill intangible tax under s. 199.032(2), F.S., in AGO 072-374. However, the distinction was noted therein that oil and gas leases are a unique species of leasehold which do not create the ordinary landlord-tenant relationship such as is present here, as well as in the previously cited opinions holding inapplicable the "Class C" tax. I might conclude by noting that a construction that notes, bonds, or other obligations secured by a mortgage upon a leasehold are outside the purview of s. 199.032(2), F.S., does not in any manner whatsoever imply that such intangibles are therefore not subject to taxation under Ch. 199, F.S. Indeed, the one mill tax under s. 199.032(1) would appear fully applicable to such intangibles and their annual return for taxation would thus be mandated. Consequently, with this limitation in mind, your second question is answered in the negative.
Question number 3 must likewise be answered in the negative. The homestead exemption requires as a necessary prerequisite that the one seeking the benefits of the exemption have legal or equitable title to the real property. See Art. VII, s. 6, State Const. and s. 196.031, F.S. Legal title is defined in Black's Law Dictionary, 4th Ed. as: One cognizable or enforceable in a court of law, or one which is complete and perfect so far as regards the apparent right of ownership and possession, but which carries no beneficial interest in the property, another person being equitably entitled thereto . . . . Equitable title on the other hand is defined in Black's, supra, as: A right in the party to whom it belongs to have the legal title transferred to him, or the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another. The interest of the holders of these particular leaseholds upon which there have been constructed private dwelling houses does not constitute legal or equitable title to the real property, and, hence, cannot support a claim for homestead exemption.